{¶ 1} An industrial-size gas heater owned by plaintiff Day-Glo Color Corporation exploded while being serviced by a technician from defendant The Brewer-Garrett Company. Although there were no injuries, the explosion caused a significant amount of damage to the heater and surrounding plant. Day-Glo brought this against Brewer-Garrett, claiming that it breached the terms of its service contract by failing to perform the service in a workmanlike manner. The court directed a verdict in Brewer-Garrett's behalf on grounds that Day-Glo failed to offer any evidence as to what caused the explosion. There being no cause for the explosion, the court found that no reasonable trier of fact could find that Brewer-Garrett breached its service contract. The sole assignment of error on appeal challenges the directed verdict.
 I {¶ 2} Civ.R.50(A)(4) states:
 {¶ 3} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 4} Our review of a directed verdict is de novo. Howell v. DaytonPower and Light Co. (1995), 102 Ohio App.3d 6, 13. We construe the evidence most strongly for the nonmoving party, who is also given the benefit of all reasonable inferences from the evidence. A motion for a directed verdict must be denied if there is substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim. Civ.R. 50(A)(4); Grau v.Kleinschmidt (1987), 31 Ohio St.3d 84, 90. Moreover, it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion. If there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-285.
 II {¶ 5} Day-Glo and Brewer-Garrett entered into an "assured service program." This required Brewer-Garrett to provide, among other things, "24 hour, 7 day a week priority customer emergency service." The service call at issue arose under this contractual obligation.
 {¶ 6} In service contracts like the one described, the failure to perform the service in a workmanlike manner using ordinary care constitutes the breach of an implied duty imposed by law. SeeVelotta v. Leo Petronzio Landscaping, Inc. (1982), 69 Ohio St. 2d 376,378-379; Vistein v. Keeney (1990), 71 Ohio App.3d 92, 104. The courts determine whether a breach of the implied duty occurred by assessing fault and addressing factual issues on whether the defendant utilized proper materials and workmanlike skill and judgment. Mitchem v.Johnson (1966), 7 Ohio St.2d 66, 73.
 {¶ 7} A "workmanlike manner" is defined in terms of how work is customarily performed by others in the same trade in the same community or the same type of work. Hence, it is viewed by reference to what those having the knowledge, training, or experience necessary for the successful practice of a trade or occupation would consider to be generally proficient. McKinley v. Brandt Constr., Inc., Lorain App. No. 05CA008792, 2006-Ohio-3290. It is important to note, however, that the implied duty to perform in a workmanlike manner is not a guarantee of the results of a repair; the implied duty simply requires those who repair or modify existing tangible goods or property to perform those services in a workmanlike manner.
 {¶ 8} The issue before the court on the motion for a directed verdict was whether Day-Glo established causation; that is, whether the explosion was proximately caused by Brewer-Garrett's failure to perform the repair in a workmanlike manner.
 III {¶ 9} The underlying facts are undisputed. The heater in question was a Fulton Thermo Pac Thermal Fluid Heater No. FT-0400-C. Although the parties referred to it as a "boiler," it was a hot oil heater. A pump circulated thermal fluid (in this case, a synthetic oil) throughout the heater and the piping system to the users and then returned the fluid through a deaerator cold seal expansion tank back to the heater. Natural gas, supplied through a three-inch pipe, fed the burners which heat the thermal fluid. A separate gas line fueled the pilot burner. The heater used a Honeywell heater control panel, known as the RM7800. This device controlled, among other things, flame supervision, system status and showed system self-diagnostics. The RM7800 controlled both the main and pilot gas lines.
 {¶ 10} A failure of the pilot flame necessitated the service call in question. Day-Glo's shift supervisor tried to restart the flame, but could not get a steady flame. He then called Brewer-Garrett, who dispatched a service technician. When he arrived, the technician found that there had been a pilot failure. He could not ignite the pilot burners. After replacing the flame rod assembly, he retested the heater. The first two attempts failed. On the third attempt, the pilot flame ignited. The burner control unit showed that the main gas valve had opened. A few seconds later, the heater exploded.
 {¶ 11} When the heater is ignited, the RM7800 activates a blower that purges all existing natural gas from the system before the pilot flame is ignited. Once the purge cycle is completed, the RM7800 allows gas to flow to the pilot while at the same time actuating the electronic ignitor to light the pilot. Once a pilot is established, the RM7800 opens the main gas supply line to allow gas to flow into the main burner. It is undisputed that Brewer-Garrett's technician did not close the main gas valve before servicing the heater. Brewer-Garrett offered uncontested evidence to show that the RM7800 worked properly at the time of the explosion.
 IV {¶ 12} It is important to understand that in this contract case, Day-Glo could not avail itself of the res ipsa loquitur theory of negligence. David v. Lose (1966), 7 Ohio St.2d 97, 100. In other words, liability could not be established simply because the heater exploded while the Brewer-Garrett technician had sole control of it. Rather, it could defeat a motion for a directed verdict only by putting on evidence from which reasonable minds could conclude that Brewer-Garrett breached the implied contractual duty to perform service in a workmanlike manner.
 {¶ 13} As part of establishing a breach of duty, Day-Glo needed to establish a cause for the explosion. Under some circumstances, causation might be inferred from the circumstances surrounding the instrumentality. But even Day-Glo's expert testified that the heater in question was an industrial model that bore no relation to heaters used by residential consumers and therefore required an expert, like him, to tell them about its workings. Ironically, the expert's justification for his presence at trial as an expert doomed Day-Glo's case because, having said that the jury needed an expert to understand how the heater worked, he utterly failed to give them an expert opinion as to how the heater exploded. This expert was not alone — Brewer-Garrett's expert likewise could not state to a degree of certainty what caused the explosion.
 {¶ 14} Day-Glo offered testimony to show that Brewer-Garrett's technician failed to turn off the gas flow to the heater, and that this somehow permitted the explosion to occur. It points to the testimony of a different Brewer-Garrett technician who had serviced the heater in the past. Day-Glo states that this witness testified that if the gas valve had been shut off, the chances of an explosion "become minimal." See Appellant's Brief at 13. Although we are obligated to view the evidence in a light most favorable to Day-Glo, this interpretation of the testimony is a mischaracterization of the trial testimony. The witness made that statement during deposition and, when confronted with that statement at trial, stated he did not agree with it "because the 7800 was proven that it worked. And we were being asked questions in a hypothetical fashion that if everything failed, including the gas valves, including the 7800, which today we know that would not be true."
 {¶ 15} By saying that the RM7800 had been proven to work, the witness was referencing the result of testing on the RM7800 unit made subsequent to his deposition testimony. The Brewer-Garrett expert who tested the RM7800 unit gave his opinion that the unit had been functioning properly. In stating this opinion, the expert noted that the heater manual did not require manual shut-off of the gas valve. Indeed, the expert referenced a Fulton "troubleshooting" guide which specifically instructed a technician to check for the proper position of manual valves. Brewer-Garrett's expert interpreted this to mean that "if for some reason you're not getting flames, you don't have a gas supply, make sure your valves are open in your fuel supply."
 {¶ 16} Day-Glo offered no evidence to rebut this opinion. That being the case, the technician's failure to turn off the gas main would have been of no moment because a properly functioning RM7800 would have purged gas from the system before the pilot flame could be lit. Thus, the technician's failure to shut off the gas flow to the heater does not explain the cause of the explosion in a manner that would create a triable issue of fact as to whether Brewer-Garrett failed to perform the service in a workmanlike manner. Indeed, even if we were to assume for the sake of argument that the technician was careless, there was no evidence to show that this carelessness caused the explosion.
 {¶ 17} It is here that we need to make that point that prevention is not the same thing as causation. Even if we were to assume for the sake of argument that shutting off the main gas valve would have prevented the explosion that does not explain what caused the explosion. It is entirely possible that the cause of this explosion was unrelated to any act or omission by the Brewer-Garrett technician. In this sense, the "fault" could not be said to lie with the technician in the absence of evidence to show exactly how his fault caused the injury.
 {¶ 18} We are aware that Day-Glo's expert testified that the explosion was caused by the presence of fuel, oxygen and ignition. This is an unremarkable statement for anyone with a rudimentary knowledge of science. Moreover, it fails to assign fault. Instead, it becomes ares ipsa loquitur argument in the sense that Day-Glo is reduced to arguing that mere existence of the three sources of an explosion must have meant that the technician did something wrong to cause them to come together. This is not the establishment of causation. Even if there was evidence to show that a technician acting in a workmanlike manner would have turned off the gas valve, there still needed to be evidence to show exactly how this omission of care caused the injury.
 {¶ 19} In the end, Day-Glo's own expert told the jury that the heater in question was too complicated for them to comprehend without expert assistance. Having staked that position, Day-Glo needed to put on expert testimony to prove its case. By failing to establish a cause for the explosion, Day-Glo left the court with no choice but to conclude that a verdict must be directed in Brewer-Garrett's favor. The assignment of error is overruled.
 {¶ 20} Judgment affirmed.
It is ordered that appellee recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the
Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., DISSENTS WITH SEPARATE OPINION (*Sitting by Assignment: Judge Michael J. Corrigan, Retired, of the Eighth District Court of Appeals.)