[Cite as *U.S. Bank Natl. Assn. v. Clarke*, 2016-Ohio-8435.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| U.S. Bank National Association, not in its individual capacity, but solely as Indenture Trustee for Castle Peak 2011-1 Loan Trust Mortgage Backed Notes, Series 2011-1, | : : : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-880 |
| v. | : | (C.P.C. No. 13CV-011429) |
| John Clarke et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on December 27, 2016

**On brief:** *Manley, Deas, Kochalski, LLC* and *Kyle E. Timken,* for appellee. **Argued:** *Matthew Richardson.*

**On brief:** *Maguire & Schneider, LLP* and *Mark R. Meterko,* for appellants. **Argued:** *Mark R. Meterko.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendants-appellants, John A. Clarke ("Clarke") and Irene Gil Llamas ("Llamas"), appeal from the judgment of the Franklin County Court of Common Pleas in a foreclosure action filed by plaintiff-appellee, U.S. Bank National Association, not in its individual capacity, but solely as Indenture Trustee for Castle Peak 2011-1 Loan Trust Mortgage Backed Notes, Series 2011-1 ("U.S. Bank"). For the reasons set forth below, we affirm the judgment of the trial court.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2}   Clarke and Llamas signed an adjustable rate promissory note in the amount of $712,500 on February 23, 2006, in order to finance the purchase of a home at 91 North Hamilton Park, in Columbus, Ohio. (Pl.'s Ex. A.) The note identified the lender as MortgageIT, Inc. The same day, Clarke and Llamas signed a mortgage granting a security interest in the home to Mortgage Electronic Registration Systems, Inc. ("MERS"). The mortgage identified MERS as the mortgagee and stated that it was "acting solely as a nominee" on behalf of MortgageIT, Inc. (Pl.'s Ex. C.) The mortgage was recorded by the Franklin County Recorder on March 2, 2006.

{¶ 3}   MERS assigned the mortgage and promissory note to GMAC Mortgage, L.L.C., on February 9, 2007.  The assignment was recorded on March 21, 2007.[1] (Pl.'s Ex. D.)

{¶ 4}   On November 9, 2009, GMAC Mortgage, L.L.C., assigned the note and mortgage to Residential Funding Company, LLC. The assignment was recorded on November 13, 2009. (Pl.'s Ex. E.)

{¶ 5}   Residential Funding Company, LLC, assigned the mortgage on May 18, 2011. The assignment identified the assignee as "U.S. BANK TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS OWNER TRUSTEE FOR CPCA TRUST 14." (Pl.'s Ex. F.) The assignment was recorded on May 26, 2011.

{¶ 6}   A document captioned "Assignment of Mortgage" was signed and notarized on August 10, 2011. The assignor was identified as CPCA Trust I, LLC. However, no assignee was named in the document, as only an empty line preceded the identifier "Assignee/s." This document was not recorded. (Def.'s Ex. 2.)

{¶ 7}   On October 3, 2011, Selene Finance ("Selene") became the mortgage servicer for Clarke and Llamas' loan. (Mar. 26, 2015 Tr. at 9.) Selene came into possession of the original promissory note signed by Clarke and Llamas on October 6, 2011, when it was deposited with its document custodian, Wells Fargo. The loan file maintained by Selene contained all assignments of the mortgage on Clarke and Llamas' property.

---

[1] The apparent inconsistency of abbreviating some of the limited liability companies involved in these transactions as "L.L.C." and others as "LLC" derives from the assignments themselves. The abbreviations are reproduced in an effort to precisely reflect the entities as identified in the documents in the record.

Selene's records had information and documents from the prior servicer, Acqura, which indicated that the last payment made on the loan had occurred in January 2011. (Tr. at 18.)

{¶ 8} A purported assignment captioned "CORRECTIVE ASSIGNMENT OF MORTGAGE" was notarized on April 12, 2012. The document stated that it was "intended to confirm the original Assignment of MORTGAGE * * * to correct the Assignee," with reference to the May 18, 2011 assignment that had been recorded on May 26, 2011. (Def. Ex. 1.) The document identified the assignor as Residential Funding Company, LLC, and the assignee as CPCA Trust I.  This document was not recorded.

{¶ 9} On May 21, 2013, another document captioned "CORRECTIVE ASSIGNMENT OF MORTGAGE" was notarized that also stated that it was "intended to confirm the original Assignment of MORTGAGE * * * to correct the assignee," with reference to the May 18, 2011 assignment. (Pl.'s Ex. G.) It identified Residential Funding Company, LLC, as the assignor. The assignee was identified as "U.S. Bank Trust National Association, not in its individual capacity, but solely as Owner Trustee for CPCA Trust I." *Id.* The document was recorded on June 14, 2013.

{¶ 10} A final assignment of the mortgage was notarized on May 23, 2013. The assignor was identified as "U.S. Bank Trust National Association, not in its individual capacity, but solely as Owner Trustee for CPCA Trust I." (Pl.'s Ex. H.) The assignee was identified as "U.S. Bank National Association, not in its individual capacity but solely as Indenture Trustee for Castle Peak 2011-1 Loan Trust Mortgage Backed Notes, Series 2011-1." *Id.*  The document was recorded on June 19, 2013.

{¶ 11} A foreclosure complaint alleging that Clarke and Llamas had defaulted on the note was filed on November 11, 2013. The complaint named "U.S. Bank National Association, not in its individual capacity but solely as Indenture Trustee for Castle Peak 2011-1 Loan Trust Mortgage Backed Notes, Series 2011-1" as the plaintiff, in care of Selene. (Compl. for Foreclosure.) The parties subsequently stipulated that Clarke and Llamas' liability on the note had been discharged in a bankruptcy proceeding, and that U.S. Bank did not seek a personal judgment against them. (Apr. 15, 2015 Stipulation.)

{¶ 12} The case was tried as a bench trial before a magistrate on March 26, 2015. U.S. Bank called Eric Wheeler, a representative of Selene, as its sole witness. Mr. Wheeler

provided testimony regarding the history of the loan file and the assignments it contained, as well as Selene's record keeping processes and servicing practices. (Tr. at 6-35.) The defense called Clarke and Llamas as witnesses, but only to confirm that neither of them knew who "the current holder of the mortgage" was. (Tr. at 37-38.)

{¶ 13} The magistrate issued a written decision on April 3, 2015. The magistrate found that U.S. Bank was the holder of the note, the chain of recorded assignments of the mortgage ended with U.S. Bank, and Clarke and Llamas had defaulted on the note. The magistrate also reached the following conclusions of law: Clarke and Llamas had breached the note and mortgage; U.S. Bank had standing to file the foreclosure action; the unrecorded assignments were "superfluous" with "no legal effect on the chain of assignments in this case" because they had never been recorded; and Clarke and Llamas were liable for $503,331.06 in unpaid principal and interest. (Apr. 3, 2015 Mag. Decision on Bench Trial.)

{¶ 14} Clarke and Llamas filed a number of objections to the magistrate's decision. (May 21, 2015 Objs.) They objected to the following conclusions: that the April 12, 2012 "Corrective Assignment" was not included within the chain of assignments or had any legal effect because it had gone unrecorded; that U.S. Bank was entitled to foreclose or had standing to do so; and that they were personally liable on the note, due to a discharge in bankruptcy.

{¶ 15} The trial court sustained the objections in part and overruled them in part. It sustained the objection regarding Clarke and Llamas' personal liability on the note, as the parties had stipulated that U.S. Bank was not seeking a personal judgment against them because of the bankruptcy discharge. The remainder of the objections were overruled, however. The trial court concluded that the unrecorded assignments "were not properly in the chain of mortgage assignments and therefore had no legal effect," and, at any rate, the mortgage had passed by equitable assignment to U.S. Bank when it came into possession of the note. (July 20, 2015 Decision and Entry at 4-5.) Because U.S. Bank was the holder of the note, the trial court concluded that it was entitled to foreclose and had standing to file the foreclosure action. Accordingly, the trial court entered an in rem judgment in favor of U.S. Bank and ordered the sale of the property to satisfy the

outstanding balance on the note. (Aug. 24, 2015 In Rem Jgmt. Entry and Decree of Foreclosure.)

{¶ 16} Clarke and Llamas timely appealed, asserting two assignments of error:

> [I.] The Trial Court erred when it concluded that the assignment from Residential Funding Company, LLC to CPCA Trust 1, dated April 12, 2012, had no legal effect because it was not recorded.

> [II.] The Trial Court erred in finding that U.S. Bank National Association, not in its individual capacity, but solely as Indenture Trustee for Castle Peak 2011-1 Loan Trust Mortgage Backed Notes, Series 2011-1 met its burden of demonstrating that it was entitled to foreclose the Mortgage.

## II.  STANDARD OF REVIEW

{¶ 17} "A foreclosure action is a civil action in equity." *Chem. Bank of N.Y. v. Neman*, 52 Ohio St.3d 204, 210 (1990). *See also U.S. Bank N.A. v. George*, 10th Dist. No. 14AP-817, 2015-Ohio-4957, ¶ 13 (noting that although the General Assembly has codified foreclosure proceedings under R.C. 2323.07, "[t]he nature of foreclosure as an equitable remedy is not extinguished with the enactment of a codifying statute that governs its procedures"). "As an equitable remedy, a trial court's decision to grant foreclosure is reviewed for an abuse of discretion." *Chase Home Fin., L.L.C. v. Heft*, 3d Dist. No. 8-10-14, 2012-Ohio-876, ¶ 25. *See also Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 274-75 (1984) (stating that an applying an abuse of discretion standard to equitable actions); *Buckeye Retirement Co., LLC v. Walling*, 7th Dist. No. 05 MA 119, 2006-Ohio-7059 (applying an abuse of discretion standard to an appeal of a foreclosure judgment). An "unreasonable, arbitrary or unconscionable" action of the trial court constitutes an abuse of discretion. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). However, questions of law are always reviewed de novo. *Long Beach Assn. v. Jones*, 82 Ohio St.3d 574, 576 (1998).

## III. ANALYSIS

{¶ 18} We begin our discussion with the second assignment of error, which asserts that U.S. Bank failed to meet its burden of demonstrating that it was entitled to foreclosure.

{¶ 19} Clarke and Llamas argue that U.S. Bank was not entitled to foreclose because several "glaring gaps in the chain of assignments" demonstrate that it was not the ultimate holder of the mortgage. (Appellants' Brief at 10.) These purported gaps arise from two documents that identify Residential Funding Company, LLC as assignor: (1) the May 18, 2011 recorded assignment to U.S. Bank as Owner Trustee of "CPCA Trust 14," which was not followed by an assignment by U.S. Bank acting on behalf of a trust in that name; and (2) the April 4, 2012 unrecorded assignment directly to CPCA Trust I, which did not subsequently assign the mortgage to any future assignee. (Appellants' Brief at 10-12.) Clarke and Llamas acknowledge our previous cases, such as *U.S. Bank Natl. Assn. v. Gray*, 10th Dist. No. 12AP-953, 2013-Ohio-3340, ¶ 32, in which we held that an equitable assignment of a mortgage occurs when the note it secures is validly negotiated to plaintiff who files a foreclosure action. However, they urge us to distinguish their case on the grounds that the "gaps" they have identified should preclude any equitable assignment of the mortgage. (Appellants' Brief at 15-16.)

{¶ 20} In response, U.S. Bank denies the existence of any irregularity in the assignments and points out that it presented the original promissory note to the trial court. (Appellee's Brief at 19-20.) Thus, even if there had been gaps in the chain of assignments, *Gray's* theory of equitable assignment allowed U.S. Bank to file the foreclosure action. U.S. Bank also believes that *Gray's* holding would control because the purported "gaps" in assignment are, by definition, the kind of missing or invalid assignments remedied by an equitable assignment of the mortgage. (Appellee's Brief at 20-21.)

{¶ 21} "The typical progression of an action to foreclose a mortgage involves a legal action against the maker of a note who has defaulted on payments together with an equitable action on the mortgage to force a sale of the property based on the lender's secured position." *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, ¶ 5. In such an action, the plaintiff "must establish that it is the current holder of both the note *and* mortgage." (Emphasis sic.) *Gray* at ¶ 30, citing *Home Sav. & Loans Co. v. Eichenberger*, 10th Dist. No. 12AP-1, 2012-Ohio-5662, ¶ 17. In a case such as the present one, where a bankruptcy proceeding has discharged a debtor's liability on the note, "the holder of the note may not pursue collection against the maker of the note;

however, the holder of the mortgage has standing to foreclose on the property and to collect the deficiency on the note from the foreclosure sale of the property." *Holden* at paragraph two of the syllabus. To prove that it is entitled to a foreclosure judgment, the plaintiff must prove a valid assignment of the mortgage, "that its mortgage interest survived the bankruptcy, and that the [homeowners] had defaulted." *Id.* at ¶ 34. The Supreme Court of Ohio characterized *Holden* as an "outlier" because the bankruptcy discharge precluded the plaintiff from collecting on the note in a foreclosure proceeding, but this is precisely the situation in the present case. *Id.* at ¶ 6.

{¶ 22} As in *Holden*, Clarke and Llamas argue that U.S Bank cannot prove the valid assignment of the mortgage it seeks to enforce. We have previously emphasized that the foreclosing plaintiff has the "burden to establish the chain of transfers and assignments, if it is not the original mortgagee, and this is well-established in the law." *U.S. Bank N.A. v. George*, 10th Dist. No. 14AP-817, 2015-Ohio-4957, ¶ 27, citing *Regions Bank v. Seimer*, 10th Dist. No. 13AP-542, 2014-Ohio-95, ¶ 19. It is also well-settled that, in a foreclosure action, "the defendant is entitled to interpose all counterclaims and defenses he may have against the creditor." *Marion Prod. Credit Assn. v. Cochran*, 40 Ohio St.3d 265, 270 (1988), paragraph one of the syllabus. *See also Pierce v. Tiersch*, 40 Ohio St. 168, 171 (1883), paragraph one of the syllabus (recognizing the right of a mortgagor to defend against foreclosure by asserting a counterclaim based on fraud by the mortgagee). More specifically, we have recognized a foreclosure defendant's right to challenge the plaintiff's asserted right to enforce a note or mortgage, as "the maker of the note or mortgage has standing to challenge their enforcement against the maker, even if not a party in privity to the particular transfer or assignment challenged." *George* at ¶ 27.

{¶ 23} In *George*, the plaintiff attempted to correct deficiencies in the note filed with the original complaint with another note attached to the affidavit of a representative of one of the assignees, but the attached note lacked indorsements to two of the mortgage's assignees. *Id.* at ¶ 29. A representative of the plaintiff, who could not explain the discrepancies in the two notes, also testified stating that another entity was the holder of the note, further muddying the circumstances of the assignments. *Id.* at ¶ 30. Accordingly, we concluded that the plaintiff had "failed to present the court with evidentiary-quality material in support of its assertion that it was the current holder of the

note and mortgage at issue" and reversed the entry of summary judgment granting foreclosure to the plaintiff. *Id.* at ¶ 29-31.

{¶ 24} The poor quality of the evidence presented in *George* is familiar grounds for challenging a foreclosure plaintiff's assertion that it is the holder of the mortgage in question. *See, e.g.*, *First Union Natl. Bank v. Hufford*, 146 Ohio App.3d 673, 678 (3d Dist.2001) (reversing summary judgment where the mortgagor "failed to produce sufficient evidence explaining or demonstrating [its] right to the note or mortgage"). Clarke and Llamas present a variation on this defense. They assert the *validity* of two of the assignments that U.S. Bank argues are *invalid*: the May 18, 2011 recorded assignment to U.S. Bank as Owner Trustee of "CPCA Trust 14," and the April 4, 2012 unrecorded assignment naming CPCA Trust I as the assignee.

{¶ 25} We first turn to the May 18, 2011 assignment from Residential Funding Company, LLC to the following assignee: "U.S. BANK TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS OWNER TRUSTEE FOR CPCA TRUST 14." The trial court found that the reference to "CPCA TRUST 14" was a typographical error that the May 21, 2013 recorded assignment corrected as "CPCA Trust I," and that the purported assignments from the servicer's loan file drafted in the interim had no legal effect in the chain of assignments.

{¶ 26} To counter this finding, Clarke and Llamas had the burden of demonstrating the validity of the May 18, 2011 assignment. *See JPMorgan Chase Bank, N.A. v. Romine*, 10th Dist. No. 13AP-58, 2013-Ohio-4212, ¶ 21 (rejecting the argument that an unrecorded, undelivered document found in the plaintiff's records effectively assigned the mortgage to another entity because the "appellant provided no evidence to rebut" testimony that the plaintiff "had never legally assigned the note and mortgage to any other financial entity"). However, their assertion of this document's validity fails on legal grounds because a mortgage assignment to a trustee on behalf of a non-existent trust is a nullity. "It is indispensible to the validity of a grant that the grantee be capable of receiving it and that both the grantee and the grantor be persons or entities in being at the time of the grant." *Thomas v. Columbus*, 39 Ohio App.3d 53, 55 (10th Dist.1987), citing *Sloane v. McConahy*, 4 Ohio 157, 169 (1829). On evidentiary grounds, there is no basis for a finding of the existence of any trust other than CPCA Trust I. Clarke and Llamas

hypothesize that "the existence of CPCA Trust 14 cannot be ruled out" and that it "may exist." (Appellants' Brief at 11.) The trial court credited Selene's representative, who testified that, although he could not "100 percent rule [it] out," based on his "actual research," he did not believe that CPCA Trust 14 existed. (Tr. at 24.) Without any evidence in the record to support the existence of CPCA Trust 14, there is no plausible basis for arguing that the May 18, 2011 assignment had any legal effect.

{¶ 27} We now turn to the April 12, 2012 unrecorded document that purported to assign the mortgage from Residential Funding Company, LLC to an assignee identified only as "CPCA Trust I." Clarke and Llamas argue that this document created a "gap" in the chain of assignments because "only CPCA Trust I could have made the next assignment of mortgage," yet the next assignment was the May 21, 2013 assignment from Residential Funding Company, LLC to U.S. Bank. (Appellants' Brief at 12.)

{¶ 28} However, as in *Romine*, Clarke and Llamas have not presented any evidence that this particular assignment was ever delivered to the assignee. Without evidence of delivery, the conveyance of an interest in real property is rendered a " 'mere nullity.' " *Romine* at ¶ 22, quoting *Williams v. Schatz*, 42 Ohio St. 47, 50 (1884). Thus, the April 12, 2012 document was not a valid assignment. As previously discussed, the May 18, 2011 document purporting to assign Residential Funding Company, LLC's interest to U.S. Bank on behalf of a non-existent trust also had no effect. After these abortive attempts at assignment, Residential Funding Company, LLC was free to try again. It finally succeeded, with the May 21, 2013 assignment that identified the assignee as "U.S. Bank Trust National Association, not in its individual capacity but solely as Owner Trustee for CPCA Trust 1," duly recorded on June 14, 2013. The final assignment, dated May 23, 2013 and recorded on June 29, 2013, placed the mortgage with U.S. Bank acting on behalf of the securitized trust named in the foreclosure complaint.

{¶ 29} In short, the documents that Clarke and Llamas claim created "gaps" in the assignment chain simply had no legal effect. They did not assign Residential Funding, LLC's interest in the mortgage away before the final assignment to U.S. Bank. Furthermore, because U.S. Bank demonstrated that it was the holder of the mortgage based on a valid series of assignments, our previous holdings regarding equitable assignment of the mortgage are irrelevant to this case. *See, e.g.*, *Gray* at ¶ 32. The trial

court did not abuse its discretion when it found that U.S. Bank was entitled to enforce the mortgage. The second assignment of error is overruled.

{¶ 30} In their first assignment of error, Clarke and Llamas argue that the trial court erred by concluding that the unrecorded assignment of April 12, 2012 from Residential Funding Company, LLC to CPCA Trust I had no legal effect because even an unrecorded assignment is enforceable between the mortgagor and the mortgagee. (Appellants' Brief at 8-9.) They argue that the document was part of the servicer's loan file with all the other assignments, and was therefore "a valid assignment" that "effectively transferred the Mortgage." *Id.* at 9.

{¶ 31} Our discussion concerning the April 12, 2012 document in the second assignment of error renders the first assignment of error moot. Clarke and Llamas correctly assert that an unrecorded mortgage assignment remains valid between the assignor and assignee. "Under the law of this state, an unrecorded mortgage, as between the parties thereto, is valid; and, as to all others, takes effect from the time it is left for record." *Stewart v. Hopkins*, 30 Ohio St. 502, 521 (1876), paragraph six of the syllabus; *ABN AMRO Mortgage Group, Inc. v. Jackson*, 159 Ohio App.3d 551, ¶ 16 (2d. Dist.2005). However, an assignment must still be valid, whether recorded or not, to convey an interest. As discussed, they failed to present any evidence of delivery to support the contention that the April 12, 2012 document was a valid assignment. The second assignment of error is overruled.

{¶ 32} Having overruled the second assignment of error, thereby rendering as moot the first assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, J., concurs.
BRUNNER, J., concurs in judgment only.

BRUNNER, J., concurring in judgment only.

{¶ 33} I concur with the judgment of the majority in overruling both of Clarke and Llamas' assignments of error based on the record before us, the factual findings made by the magistrate and by the trial court and under the law as it stood at the time of the trial. But I wish to register my concern about the application of the law of equitable assignment,

the limitations that should apply to it under the Unified Commercial Code ("UCC"), and how that squares with the state of the law after the Supreme Court of Ohio issued its decision in *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, on July 1, 2016, whereby a bank's ownership of a "mortgage" gives it standing to proceed in foreclosure to collect the deficiency on a note discharged in bankruptcy. Acknowledging this Court has followed and applied *Holden* here and in earlier holdings in *U.S. Bank N.A. v. George*, 10th Dist. No. 14AP-817, 2016-Ohio-7788, ¶ 28, and *CitiMortgage, Inc. v. Wiley*, 10th Dist. No. 15AP-642, 2016-Ohio-5902, ¶ 14, I am left with concerns about how to harmonize the *Holden* decision with the application of the UCC to this and other situations, especially in the context of a discussion of equitable assignment. Thus, I write separately.

{¶ 34} We earlier held in *United States Bank Natl. Assn. v. Gray*, 10th Dist. No. 12AP-953, 2013-Ohio-3340, ¶ 33, that both common law and the UCC provide for equitable assignment, such that a mortgage is not severed from the note it secures. We stated:

> " '[T]he negotiation of a note operates as an equitable assignment of the mortgage, even though the mortgage is not assigned or delivered.' " *Deutsche Bank Natl. Trust Co. v. Cassens*, 10th Dist. No. 09AP-865, 2010 Ohio 2851, ¶ 17, quoting *U.S. Bank Natl. Assn. v. Marcino*, 181 Ohio App.3d 328, 2009 Ohio 1178, ¶ 52, 908 N.E.2d 1032 (7th Dist.); *U.S. Bank, N.A. v. Armstrong*, 6th Dist. No. WD-12-031, 2013-Ohio-2130, ¶ 16. In other words, "[t]he physical transfer of the note endorsed in blank, which the mortgage secures, constitutes an equitable assignment of the mortgage, regardless of whether the mortgage is actually (or validly) assigned or delivered." [*Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. No. 98502, 2013-Ohio-1657,] at ¶ 65.
>
> * * * Recently, the Permanent Editorial Board for the Uniform Commercial Code answered the question, "[w]hat if a note secured by a mortgage is sold * * *, but the parties do not take any additional actions to assign the mortgage that secures payment of the note, such as execution of a recordable assignment of the mortgage?" 9A Hawkland, *Uniform Commercial Code Series*, Section 9-203:16 [Rev] (2012). The Board explained:

U.C.C. § 9-203(g) explicitly provides that, in such cases, the assignment of the interest of the seller or other grantor of a security interest in the note automatically transfers a corresponding interest in the mortgage to the assignee * * *. (* * * [A] "security interest" in a note includes the right of a buyer of the note.) * * * [T]he UCC is unambiguous: the sale of a mortgage note * * * not accompanied by a separate conveyance of the mortgage securing the note does not result in the mortgage being severed from the note.

*Id.* at ¶ 32-33.

{¶ 35} Yet, in *Holden,* the Supreme Court stated that:

*Generally*, "the promissory note is the primary evidence of the debt," *Washer v. Tontar*, 128 Ohio St. 111, 113, 190 N.E. 231, 40 Ohio L. Rep. 646 (1934), and the borrower's history of payments is evidence of amounts credited to reduction of the principal, which proportionately reduce the mortgage lien. [4 Wolf, *Powell on Real Property*, Section 37.12[5],] 37-226 [2008].

(Emphasis added.) *Id.* at ¶ 28. This is consistent with the UCC as found in R.C. 1303.39(A) and (B)(2). But taking a discharge in bankruptcy to be another form of dishonor of a note that evidences a debt, as apparently did the Supreme Court in *Holden,* the dishonor of a note affects who may enforce the underlying debt. The Supreme Court in *Holden* did not address this, but instead referred to owning the *mortgage.* I believe the relevant consideration is who owns the note at the time of its discharge such that foreclosure remains an equitable remedy for that obligee to collect the raw debt still owed at the time of the note's dishonor through discharge, without regard to equitable assignment and the status of the mortgage. Because discharge in bankruptcy has affected a dishonor of the note, the instrument essentially becomes a nullity for any future negotiation under the UCC. As such, the mortgage itself, becomes irrelevant.

{¶ 36} R.C. 1303.62(A)(2), or UCC 3-502, provide that, as to a note, "dishonor" occurs when the note is one "not payable on demand and [] payable at or through a bank or the terms of the note require presentment" and when "presentment is duly made and the note is not paid on the day it becomes payable or the day of presentment, whichever is later." In short, under the UCC, if a note is not paid when due, or as in *Holden* and here, discharged in bankruptcy, it becomes dishonored. The note's obligee may collect on the

debt represented by the note in an amount no longer suspended in the note.   R.C. 1303.39(B)(2).

{¶ 37}  R.C. 1303.39(B)(3) further provides:

> Except as provided in division (B)(4) of this section, if the check or note is dishonored and the obligee of the obligation for which the instrument was taken is the person entitled to enforce the instrument, the obligee may enforce either the instrument or the obligation. In the case of an instrument of a third person that is negotiated to the obligee by the obligor, discharge of the obligor on the instrument also discharges the obligation.

(Emphasis added.)  In this respect, *Holden* is consistent with the UCC in establishing that the discharge of an obligor on a note discharges the obligation under the note.  Thus, under the lens of *Holden,* the trial court was correct in sustaining Clarke and Llamas' objections to the magistrate's finding of their personal liability post-bankruptcy discharge. They were no longer personally liable.

{¶ 38}  The important question for US Bank, NA ("US Bank") was whether it was the note's holder at the time the note was dishonored through bankruptcy discharge and not at the time it filed the foreclosure action.  If it only simply possessed the note at the time of the bankruptcy discharge, possession alone was not and never has been sufficient to create for it holder status and standing to foreclose.  We have specifically stated that:

> [A] valid transfer involves negotiation and endorsement under the Uniform Commercial Code ("UCC").
>
> Under Ohio law, the right to enforce a note cannot be assigned; rather, the note must be negotiated in conformity with Ohio's version of the Uniform Commercial Code. *In re Wells*, 407 B.R. 873, 880 (N.D.Ohio 2009). See also *HSBC Bank USA, Natl. Assn. v. Surrarrer*, 8th Dist. No. 100039, 2013-Ohio-5594, ¶ 17 (in order for one other than the payee to enforce the note, the note must be negotiated to another who then becomes the holder of the note). An attempt to assign a note creates a claim to ownership, but does not transfer the right to enforce the note. *Wells* at 880.

*George* at ¶ 15.  This factual question seems to have been resolved by the trial court to be relevant as of the time of the filing of the foreclosure action.  But under *Holden* and more

so the UCC, the relevant question remains unanswered whether US Bank was the holder of the note as of the time of the discharge of the note in bankruptcy.

{¶ 39} In this context, equitable assignment of the mortgage is only relevant pre-bankruptcy discharge. As such, after the discharge of the note and its obligation as to Clarke and Llamas personally, the only relevant question as to standing to foreclose is, "Who is the holder of the raw debt that is no longer suspended by the now dishonored note?" It is this obligee that has available to it the remedy of foreclosure to collect on the debt.

{¶ 40} Not addressed by *Holden* but contained with the UCC, the concepts of "holder" or "person entitled to enforce" Clarke and Llamas' note have no further application following dishonor of their note through discharge in bankruptcy. Nowhere in the UCC is the word "mortgage" found. Under neither the UCC nor the doctrine of equitable assignment does a mortgage substitute in any way for a dishonored note. It is the remaining debt and who is the lawful obligee at the time of a note's dishonor (in this case through bankruptcy discharge) that establishes standing in the foreclosure action. This question was not addressed by the trial court or by the parties to the decision we now review on appeal. It exists in the UCC. It was broached without specific reference to the UCC in *Holden.* As such, it is incumbent on us to raise the issue for further review and resolution as future cases lend themselves to these analyses.

{¶ 41} *Holden* does not address key provisions of the UCC regarding the creation and enforcement of the debt for which an instrument was taken or how the UCC applies to a note that is discharged and thereby dishonored. We are thus left in somewhat murky waters until there is further analysis and definition of which cases are "outliers" from what is "generally" the primary evidence of a debt.

{¶ 42} For these reasons, I concur in judgment only with the decision of the majority and write separately to convey these concerns.

_____