[Cite as *Huntington Natl. Bank v. Haehn*, 2018-Ohio-4837.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The Huntington National Bank, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 17AP-342 |
| v. | : | (C.P.C. No. 10CV-9737) |
| Chris Haehn et al., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 6, 2018

**On brief:** *Weltman, Weinberg & Reis Co., L.P.A.*, and *Daniel A. Friedlander*, for appellee.

**On brief:** *Kaltenbach Vargo, LLC*, and *James G. Vargo*, for appellant Chris Haehn.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Chris Haehn, appeals a judgment of the Franklin County Court of Common Pleas granting the foreclosure sought by plaintiff-appellee, The Huntington National Bank ("Huntington"). For the following reasons, we affirm that judgment.

{¶ 2} On March 12, 2004, Haehn executed a note in which he promised to pay $244,000, plus interest, to his lender, Sky Bank. Haehn also granted Sky Bank a mortgage on his residence, located at 93 W. King Avenue, to secure the note.

{¶ 3} In 2007, Sky Bank merged into Huntington. At that point, Huntington assumed Sky Bank's interest in Haehn's note and mortgage.

{¶ 4}   From 2004 to late 2009, Haehn made regular mortgage payments each month.  However, Haehn did not remit any payments in November or December 2009. When Haehn made a payment in January 2010, Huntington accepted the payment and applied it to Haehn's account as the payment due on November 1, 2009.  Haehn made another payment in February 2010, which Huntington accepted and applied to Haehn's account as the payment due on December 1, 2009.

{¶ 5}   On April 24, 2010, Huntington mailed to Haehn a notice of its intention to accelerate the amount due on Haehn's mortgage and foreclose on his residence.  In relevant part, the notice stated:

> This letter is to inform you that you have breached the terms of the identified mortgage by failing to pay the monthly note payment due January 01, 2010, all subsequent payments and any accrued late charges or other fees.  You have the right to cure this breach by paying the full amount due on the date your payment is received as outlined below.
>
> | If payment is received by: | Amount Due |
> | --- | --- |
> | April 30, 2010 | $5,163.00 |
> | May 25, 2010 | $6,810.41 |
>
> * * * Payments for less than the full amount * * * will not be accepted and will be returned to you.  If you do not cure your breach by [May 25, 2010], we will accelerate your mortgage. This means you will be required to repay the entire mortgage balance in full.  We will also instruct our attorney to initiate foreclosure proceedings.

(Emphasis sic; Pl.'s Ex. 6.)

{¶ 6}   According to the payment records maintained by Huntington, Huntington received mortgage payments from Haehn on April 16, April 29, April 30, June 3, July 28, and September 14, 2010.[1]  Each of these payments consisted of a check for $1,593.82, the amount of Haehn's monthly payment.  While Huntington accepted these payments, it did not apply them to Haehn's account.  Rather, Huntington returned these payments to Haehn because each was insufficient to bring his account current.

---

[1] Controversy surrounds the September 14 payment.  Haehn contends that he actually made this payment in March 2010 via a check dated March 12, 2010.  However, Huntington's records reflect September 14, 2010—the date Huntington cashed that check—as the date it received the payment.

{¶ 7}   On July 1, 2010, Huntington filed a complaint in foreclosure against Haehn.[2] After Haehn filed his answer, the parties engaged in at least two attempts to mediate their dispute.  Each attempt was unsuccessful.

{¶ 8}   On May 16, 2014, Haehn moved for summary judgment.  Haehn asserted that in the notice of acceleration, Huntington wrongly stated that he had defaulted on his loan in January 2010, and Huntington miscalculated the amounts due to cure the purported default.  Due to these alleged defects in the notice of acceleration, Haehn argued that Huntington failed to comply with all the conditions precedent for filing for foreclosure.  Haehn also maintained that he had cured any default by submitting multiple mortgage payments to Huntington in March and April 2010.  Finally, Haehn argued that Huntington waived any right to accelerate and foreclose because it accepted payments from Haehn.

{¶ 9}   Huntington responded to Haehn's summary judgment motion with an opposing memorandum filed June 5, 2014.  Haehn replied to Huntington's response on June 13, 2014.  In the reply, Haehn stated that the trial court should strike Huntington's memorandum in opposition because Huntington filed it six days late.

{¶ 10}  After the close of briefing, on August 1, 2014, Huntington filed the affidavit of Michael Mantilla, who worked for Huntington as a litigation specialist, to support Huntington's memorandum in opposition.  On August 4, 2014, Haehn moved to strike that affidavit because Huntington did not file it timely.   Haehn also moved to strike Huntington's memorandum in opposition to its August 4, 2014 motion to strike because Huntington filed it 21 days late.

{¶ 11} On October 14, 2014, the trial court issued a decision denying Haehn's motions to strike and his motion for summary judgment.  With regard to the motion to strike Mantilla's affidavit, the trial court concluded that it would consider the affidavit because the court had held the motion for summary judgment "in abeyance based on the parties' representations that they were working to settle [the] case." (Oct. 14, 2014 Decision & Entry at 5.)  With regard to the motion for summary judgment, the trial court found that given the conflicting evidence, questions of fact remained regarding whether Huntington

---

[2]  The complaint also named additional defendants with a possible interest in Haehn's property.  None of those defendants are involved in this appeal.

had provided Haehn with a proper notice of acceleration and whether Haehn had defaulted on the note.

{¶ 12} The trial court conducted a bench trial on November 12, 2014. During trial, Mantilla testified to the facts set forth above. Mantilla also identified copies of Haehn's note and mortgage, documents establishing the merger of Sky Bank into Huntington, the payment history for Haehn's loan, and the notice of acceleration Huntington mailed to Haehn. The trial court admitted each of these documents into evidence.

{¶ 13} Haehn also testified at trial. During his testimony, Haehn denied receiving the notice of acceleration.[3] Haehn also claimed that his loan was not in default on April 30, 2010 because he had made payments in March and April 2010 in excess of the cure amount.

{¶ 14} On August 7, 2015, the trial court entered a decision granting judgment in Huntington's favor. The trial court ordered Huntington's counsel to submit to the court an appropriate judgment entry and decree of foreclosure within 30 days of the date of the decision. Huntington's counsel, however, failed to comply with the trial court's order.

{¶ 15} On February 9, 2016, the trial court issued an entry entitled "SUPERINTENDENCE RULE 40 ENTRY." In its entirety, the entry stated:

> This Court, after a review of the above case, has found that plaintiff has failed to prosecute this action. This is to notify you that pursuant to Superintendence Rule 40 of the rules governing the Courts of Ohio, this action will be dismissed for want of prosecution on or about the 9th day of February 2016, unless plaintiff can show in writing, within ten (10) days good cause why such action should not be dismissed.

The Franklin County Clerk of Courts ("clerk") recorded the February 9, 2016 entry as a dismissal of the case for want of prosecution, and the clerk terminated the case.

{¶ 16} Approximately four months later, on June 27, 2016, Huntington filed a motion for leave to file the attached judgment entry/foreclosure decree instanter. The attorney who signed the motion indicated that she had recently taken over the handling of the case and sought to correct the prior attorney's lapse.

---

[3] The trial court did not find this testimony credible, and Haehn does not challenge that credibility determination on appeal.

{¶ 17} Haehn responded to Huntington's motion with a motion to strike. Haehn argued that the trial court no longer had jurisdiction to act because it had entered a dismissal order.

{¶ 18} In a decision and entry dated January 27, 2017, the trial court vacated its February 9, 2016 entry, denied Haehn's motion to strike, and granted Huntington leave to file the proposed final judgment entry. On April 12, 2017, the trial court entered a judgment entry ordering foreclosure.

{¶ 19} Haehn now appeals the April 12, 2017 judgment, and he assigns the following errors:

> I. The Trial Court erred by vacating its February 9, 2016 dismissal and by granting Appellee leave to file its proposed Judgment Entry.
>
> II. The Trial Court's August 7, 2015 Decision was against the manifest weight of the evidence.
>
> III. The Trial Court abused its discretion by allowing Appellee to present untimely evidence and arguments in response to Appellant's Motion for Summary Judgment.
>
> IV. The cumulative effect of the Trial Court's decisions to allow Appellee to repeatedly disregard the Civil and Local Rules and Court Orders and to untimely file numerous documents and responses amounts to an abuse of discretion.

{¶ 20} By his first assignment of error, Haehn argues that the trial court erred in vacating the February 9, 2016 entry and granting Huntington's motion for leave to file the proposed final judgment entry. We disagree.

{¶ 21} Haehn contends that the trial court lacked jurisdiction to sua sponte vacate the February 9, 2016 entry because that entry constituted a final, appealable order. Haehn asserts that the February 9, 2016 entry dismissed the action under Civ.R. 41(B)(1), and that that dismissal operated as an adjudication on the merits because the trial court did not otherwise specify in the entry. We interpret the February 9, 2016 entry differently.

{¶ 22} In that entry, the trial court unambiguously conveyed its intent to comply with Sup.R. 40(A)(1), which provides that "[c]ases that have been on the docket for six months without any proceedings taken in the case * * * shall be dismissed, after notice to counsel of record, for want of prosecution, unless good cause be shown to the contrary." To

fulfill this purpose, the entry stated, "This is to notify you * * * this action will be dismissed * * * unless plaintiff can show * * * good cause why said action should not be dismissed." (Feb. 9, 2016 Entry.)  Thus, the entry warned that the trial court would dismiss the action if Huntington did not offer a good reason for its delay in following the August 7, 2015 order to provide a proposed final judgment entry.  Given the cautionary purpose of the entry and the future tense used with regard to dismissal, the entry did not constitute a dismissal.  By its plain language, the entry only supplied the parties with the notice required as a condition precedent to dismissal.  *See* Sup.R. 40(A)(1) Commentary (July 1, 1997) ("Dismissal is not summary; notice to the parties or counsel is a condition precedent.").

{¶ 23}  We recognize that two factors muddled the import of the entry: (1) the entry indicated that dismissal would occur "on or about" February 9, 2016—the same day the entry was filed—if Huntington did not provide good cause, and (2) the entry was administratively categorized as a dismissal for want of prosecution, which led the clerk to terminate the case.  However, we conclude that neither factor overcomes the plain language of the entry.

{¶ 24}  Because the February 9, 2016 entry only warned that a dismissal could occur, it is an interlocutory order.  *See In re C.C.*, 10th Dist. No. 07AP-993, 2008-Ohio-2803, ¶ 10, quoting *Black's Law Dictionary* (5th Ed.Rev.1979) (defining "interlocutory" as " '[s]omething intervening between the commencement and the end of a suit which decides some point or matter, but is not a final decision of the whole controversy.' "); *Lingo v. Ohio Cent. RR.*, 10th Dist. No. 05AP-206, 2006-Ohio-2268, ¶ 17 ("[A]n order that neither disposes of all claims between the parties nor contains an express determination that there is no just reason for delay is an interlocutory order.").  A trial court may reconsider and revise an interlocutory order at any time before the entry of final judgment.  Civ.R. 54(B); *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. No. 12AP-647, 2013-Ohio-3890, ¶ 27; *Zunshine v. Cott*, 10th Dist. No. 06AP-868, 2007-Ohio-1475, ¶ 19.  Consequently, trial courts have the authority to vacate an interlocutory order during the pendency of an action.  *Palmer v. Bowers*, 9th Dist. No. 15CA010836, 2017-Ohio-355, ¶ 11; *In re K.M.*, 3d Dist. No. 17-11-15, 2011-Ohio-3632, ¶ 22; *Baker v. Schuler*, 2d Dist. No. 02CA0020, 2002-Ohio-5386, ¶ 21.  The trial court, therefore, did not exceed the bounds of its jurisdiction when it vacated the February 9, 2016 entry.

{¶ 25} Haehn next argues that, assuming the trial court properly vacated the February 9, 2016 entry, the trial court erred in granting Huntington leave to file the proposed final judgment entry. While Haehn's argument raises a close question, we conclude that the trial court did not abuse its discretion in allowing Huntington to belatedly submit the proposed final judgment entry.

{¶ 26} Pursuant to Civ.R. 6(B):

> When by * * * order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *.

In determining whether the neglect at issue qualifies as excusable or not, a court must examine all the surrounding facts and circumstances. *Davis v. Immediate Med. Servs., Inc.*, 80 Ohio St.3d 10, 14 (1997). Those considerations include potential prejudice to the opposing party and the trial court's right to control its docket. *Kaur v. Bharmota*, 10th Dist. No. 05AP-1333, 2006-Ohio-5782, ¶ 9. A court also must remain mindful that, optimally, cases should be decided upon their merits, not procedural grounds. *State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs.*, 72 Ohio St.3d 464, 466 (1995). In the final analysis, the excusable neglect standard under Civ.R. 6(B)(2) is notably forgiving. *Dietrich v. Dobos*, 10th Dist. No. 15AP-2, 2015-Ohio-4866, ¶ 13.

{¶ 27} A trial court exercises its discretion in deciding whether to grant an extension under Civ.R. 6(B)(2). *Lindenschmidt* at 465. Consequently, an appellate court must uphold a ruling granting an extension absent an abuse of discretion. *Davis* at 14. An abuse of discretion is more than an error in law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Lindenschmidt* at 465.

{¶ 28} Here, the trial court ordered Huntington to file a proposed judgment entry within 30 days of the August 7, 2015 decision. Huntington neither met this deadline nor moved for an extension prior to the deadline's expiration. Consequently, under Civ.R. 6(B)(2), Huntington had to establish excusable neglect in order to obtain an extension of the deadline.

{¶ 29} Huntington offered a relatively meager excuse: another attorney had recently taken over handling the case. Despite the weakness of this excuse, other considerations

justified granting Huntington an extension. Most importantly, a trial had occurred and the trial court had reached a decision on the merits. Consequently, denying Huntington leave would elevate procedure over a substantive resolution of the action. Second, instead of causing Haehn prejudice, Huntington's procrastination actually benefited Haehn. Haehn ceased making regular mortgage payments in 2010, so Huntington's dilatory conduct allowed Haehn to continue his cost-free occupancy of his residence for at least an additional year.

{¶ 30} Furthermore, in applying the abuse-of-discretion standard, we must accord wide latitude to the trial court to resolve procedural matters. *Coles-Morgan v. Flagship Mtge. Corp.*, 10th Dist. No. 04AP-203, 2005-Ohio-2994, ¶ 11. " 'Therefore, in a close case, the trial court's determination of whether certain action or inaction constitutes excusable neglect may be upheld on appeal, regardless of what the trial court determines.' " *Citizens Natl. Bank v. Harrison*, 2d Dist. No. 26742, 2016-Ohio-2746, ¶ 22, quoting *Brown v. Household Realty Corp.*, 2d Dist. No. 2003-CA-24, 2003-Ohio-5414, ¶ 18 (discussing Civ.R. 6(B)); *accord McGee v. C&S Lounge*, 108 Ohio App.3d 656, 661 (10th Dist.1996) (holding that under the abuse-of-discretion standard, "two trial courts could reach opposite results on roughly similar facts and neither be guilty of an abuse of discretion"). Based on the above considerations and the deference due to the trial court's ruling, we conclude that the trial court did not abuse its discretion in granting Huntington an extension to file the proposed final judgment entry.

{¶ 31} In sum, we find that the trial court did not err in vacating the February 6, 2016 entry or in granting Huntington leave to file the proposed final judgment entry. Accordingly, we overrule Haehn's first assignment of error.

{¶ 32} By Haehn's second assignment of error, he argues that the verdict in favor of Huntington is against the manifest weight of the evidence. We disagree.

{¶ 33} When reviewing whether a judgment is against the manifest weight of the evidence, an appellate court engages in evidentiary weighing to determine whether the evidence underlying the judgment is competent and credible. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 15. " 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Id.* at ¶ 14, quoting

*C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978). In determining whether the record contains the necessary evidence, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way. *Eastley* at ¶ 20. Appellate courts, however, must give deference to the trial court's factual findings because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 34} To be entitled to foreclosure, a plaintiff must prove: (1) execution and delivery of a note and mortgage; (2) valid recording of the mortgage; (3) the plaintiff is the holder of the note, or a person entitled to enforce the note, and the holder of the mortgage; (4) if the plaintiff is not the original lender/mortgagee, the chain of transfers and assignments; (5) the debt is in default; (6) the plaintiff has met all conditions precedent; and (7) the amount of the principal and interest due. *CitiMortgage, Inc. v. Taylor*, 10th Dist. No. 15AP-726, 2016-Ohio-8337, ¶ 18. Here, Haehn contends that Huntington established neither that it had satisfied all conditions precedent nor that Haehn's debt was in default.

{¶ 35} Haehn argues that Huntington failed to fulfill the conditions precedent to filing for foreclosure because Huntington provided him with a defective notice of acceleration. We find this argument unavailing.

{¶ 36} In relevant part, Section 22 of Haehn's mortgage states:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument * * *. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. * * * If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.

(Pl.'s Ex. 3.)  Because this provision requires the lender to provide notice before the lender accelerates the amount due and seeks foreclosure, compliance with Section 22 is a condition precedent to Huntington's right to accelerate and foreclose.  *See U.S. Bank, N.A. v. Weber*, 10th Dist. No. 12AP-107, 2012-Ohio-6024, ¶ 12 (when construing an identical mortgage provision, concluding that "proper notice of default is a condition precedent to the lender's right to accelerate and foreclose"); *Natl. City Mtge. Co. v. Richards*, 182 Ohio App.3d 534, 2009-Ohio-2556, ¶ 21 (10th Dist.) (holding that " '[w]here prior notice of default and/or acceleration is required by a provision in a note or mortgage instrument, the provision of notice is a condition precedent' ").

{¶ 37}  Haehn first contends that his notice of acceleration was defective because it misstated that he had "breached the terms of the identified mortgage by failing to pay the monthly note payment due January 1, 2010."  (Pl.'s Ex. 6.)  Haehn points out that he made a monthly payment in January 2010.  Haehn is correct, but he ignores the effect of his failure to make his November 1 and December 1, 2009 monthly payments.  Huntington applied the monthly payment Haehn submitted in January 2010 to cover the missing November 1, 2009 monthly payment.  Likewise, Huntington applied the monthly payment Haehn made in February 2010 to cover the missing December 1, 2009 monthly payment.  After applying the payment made in February 2010 to Haehn's account, Huntington accepted, but did not apply, Haehn's payments.  Thus, Haehn's account fell into default with the lack of the monthly payment due on January 1, 2010.

{¶ 38} Second, Haehn argues that the notice of acceleration incorrectly stated the amounts he had to pay to cure his default because those amounts did not account for the payment he made on April 16, 2010.  We are not persuaded.  Haehn's argument overlooks the mortgage provision that permitted Huntington to accept the April 16, 2010 payment but refrain from applying it to Haehn's account.  In relevant part, Section 1 of the mortgage states, "Lender may accept any payment or partial payment insufficient to bring the Loan current, * * * but Lender is not obligated to apply such payments at the time such payments are accepted."  (Pl.'s Ex. 3.)  Additionally, Section 1 provides that, "Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current."  *Id.*

{¶ 39} The April 16, 2010 payment was insufficient to bring Haehn's loan current, as he was four payments behind at that point. Huntington, consequently, exercised its contractual right to refuse to apply the April 16, 2010 payment to Haehn's account. That payment, therefore, did not factor into the calculation of the cure amount.

{¶ 40} Finally, Haehn argues that the notice of acceleration wrongly stated the amounts he had to pay to cure his default because those amounts included late charges. For this argument, Haehn relies on Mantilla's testimony that late charges are "applied to the end of the mortgage." (Tr. at 55.) Haehn infers from this testimony that Huntington could not include late charges in the cure amounts listed in the notice of acceleration. Haehn, however, disregards the context of Mantilla's testimony. In fact, Mantilla testified that, *if a borrower is current in his payments*, then Huntington applies late charges to the end of the mortgage. Here, Haehn was not current, so Mantilla's testimony does not support the inference Haehn draws. In other words, we cannot infer that late charges are inappropriately incorporated into a cure amount that a borrower in default, such as Haehn, must pay.

{¶ 41} In sum, we find no defects in the notice of acceleration. Therefore, we reject Haehn's argument that Huntington failed to fulfill the condition precedent set out in Section 22 of the mortgage.

{¶ 42} Next, Haehn argues that he cured his default by April 30, 2010. Haehn maintains that, on that date, Huntington possessed $6,375.28 worth of mortgage payments, which exceeded the amount due to cure Haehn's default (i.e., $5,163 according to the notice of acceleration). To reach the total of $6,375.28, Haehn adds together the payments Huntington received on April 16, April 29, April 30, and September 14.

{¶ 43} Even if we assume that Haehn made the September 14 payment in March, Haehn's argument fails. Individually, none of the payments at issue brought the loan current. Thus, under Section 1 of the mortgage, Huntington accepted the payments, but it did not apply the payments to Haehn's account. Huntington ultimately returned each payment to Haehn. Haehn did not make a full payment of $5,163 by April 30, 2010, nor did Haehn make a full payment of $6,810.41 by May 25, 2010. Consequently, Haehn never cured his default.

{¶ 44} Additionally, Haehn argues that Huntington waived its right to foreclose by accepting payments from Haehn after April 24, 2010, the date of the notice of acceleration. We disagree.

{¶ 45} Haehn's mortgage contains two provisions precluding waiver of Huntington's contractual rights. First, in Section 1, the mortgage states, "Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder." (Pl.'s Ex. 3.) Second, in Section 12, the mortgage provides, "Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments * * * in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy." *Id.*

{¶ 46} Typically, Ohio courts enforce anti-waiver provisions according to their terms. *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601, ¶ 111 (10th Dist.). Under the terms of the anti-waiver provisions in the mortgage, Huntington's acceptance of payments after it declared a default did not waive its right to foreclose. Accordingly, we reject Haehn's waiver argument.

{¶ 47} Finally, Haehn argues that the trial court acted inequitably in granting a foreclosure. We disagree.

{¶ 48} Foreclosure is a civil action in equity. *U.S. Bank, N.A. v. George*, 10th Dist. No. 14AP-817, 2015-Ohio-4957, ¶ 12. Consequently, even if a court finds that a plaintiff has satisfied all the legal elements necessary to prevail, the court may determine that foreclosure is not an appropriate remedy for equitable reasons. *Id.* at ¶ 11. An appellate court applies the abuse-of-discretion standard when reviewing a trial court's decision as to whether equity bars foreclosure. *U.S. Bank, N.A. v. Clarke*, 10th Dist. No. 15AP-880, 2016-Ohio-8435, ¶ 17.

{¶ 49} Here, Haehn asserts that Huntington acted inequitably because it provided him with a defective notice of acceleration, refused to apply payments to his account, and accepted payments after issuing the notice of acceleration. As we concluded above, the notice of acceleration was not defective. Additionally, in dealing with Haehn, Huntington acted pursuant to its rights under the mortgage. The trial court, therefore, did not abuse its discretion in finding no inequities preventing foreclosure.

{¶ 50} Having rejected each of Haehn's arguments in his second assignment of error, we conclude that the trial court appropriately entered final judgment in Huntington's favor. Accordingly, we overrule the second assignment of error.

{¶ 51} By Haehn's third assignment of error, he argues that the trial court erred in allowing Huntington to present untimely evidence and argument in response to Haehn's motion for summary judgment. We find the alleged error moot.

{¶ 52} Ordinarily, "the denial of a motion for summary judgment is not a point of consideration in an appeal from a final judgment entered following a trial on the merits." *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 156 (1994). If a trial court denies summary judgment due to the existence of a genuine issue of material fact and the nonmoving party then prevails at trial, any error in denying the motion for summary judgment is moot or harmless. *Id.* at 155-56. Any error in the trial court's evaluation of the evidence at the summary judgment stage becomes moot or harmless when a full and complete development of the facts at trial—as opposed to the limited factual record elicited through discovery—entitles the nonmoving party to judgment. *Id.* To allow a summary judgment decision based on less evidence to prevail over a verdict reached on more evidence would defeat the fundamental purpose of judicial inquiry. *Id.* at 157.

{¶ 53} Here, Haehn does not directly attack the trial court's decision to deny his motion for summary judgment. Haehn, instead, obliquely challenges that decision by arguing that the trial court's error in considering the untimely evidence and argument resulted in the court wrongly deciding the summary judgment motion. Despite the roundabout nature of his argument, Haehn seeks relief in the form of a reversal of the summary judgment decision. Consequently, our resolution of this assignment of error would require us to determine whether the trial court erred in finding the record contained sufficient evidence to establish a genuine issue of material fact. Under *Whittington*, a trial on the merits moots that kind of error. Accordingly, we overrule Haehn's third assignment of error.

{¶ 54} By Haehn's fourth assignment of error, he argues that this court should dismiss this action due to the cumulative effect of the trial court's decisions to allow Huntington to submit late filings. We disagree.

{¶ 55} Under the doctrine of cumulative error, an appellate court will reverse a criminal conviction if "the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 223. The cumulative-error doctrine does not typically apply to civil cases. *Jarvis v. Hasan*, 10th Dist. No. 14AP-578, 2015-Ohio-1779, ¶ 92; *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 12AP-999, 2013-Ohio-5140, ¶ 124.

{¶ 56} The case at bar is not the exceptional civil case where the appellant has shown that the cumulative effect of the trial court's error deprived him of a fair trial, thus justifying reversal. Haehn, actually, does not contend that he was denied a fair trial. He just complains about the number of times the trial court extended deadlines for Huntington. We have not found any error in the trial court's actions, so we decline to find any cumulative error. Accordingly, we overrule Haehn's fourth assignment of error.

{¶ 57} For the foregoing reasons, we overrule Haehn's four assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and HORTON, JJ., concur.

———————————