DECISION. *Page 2 
{¶ 1} Defendant Allied Plumbing Sewer Services, Inc., ("Allied") appeals the trial court's judgment in favor of Allied's former customer, plaintiff Lovarnia Mathis.
 {¶ 2} Mathis hired Allied in April 2006 to address her complaint of slow drains. Mathis had hired other companies in the past to remedy similar complaints. Allied's employee ran a cable, or plumber's snake, in Mathis's main sewer pipe for approximately 80 feet, when it became stuck. A second employee arrived to help remove the cable. Mathis argued with them over the cost of the service call, which then exceeded the estimate she had received for clearing the pipe.
 {¶ 3} Late in the evening, after several hours of work, the Allied employees cut the cable line outside the presence of Mathis. Then, according to Mathis, they told her the job was "done" and failed to tell her that the cable remained in her pipe and that she could not use her plumbing without a backup occurring. But the employees did give her a bill for the $260 service call, which Mathis signed. The bill contained a handwritten note that we have strained to read as follows: "Ran cable at 80 feet got hung up in mud or roots so needs to be dug up and replaced."
 {¶ 4} Mathis and her family continued to use the plumbing in the house. The next morning, sewage backed up into her basement from the sewer pipe and soiled her carpeting. She called Allied and learned that the employees had cut the cable and left it in the pipe. She then demanded that they return and remove the cable. Allied offered to remove the cable and to repair the entire pipe for $3000. Allied told Mathis that her pipe was probably crushed underground and that Allied would have to dig up part of her yard to obtain access to the pipe and cable.
 {¶ 5} Mathis refused Allied's offer and filed a complaint against Allied for damages of $3,000 in the Small Claims Division of the Hamilton County Municipal Court. *Page 3 
These damages included the cost she had incurred to have her basement carpet cleaned. Allied transferred Mathis's lawsuit to municipal court, and the case was set for a bench trial. Prior to trial, Mathis hired a different plumbing company that charged her $2,200 to dig up part of her yard, to remove Allied's cable, and to repair the sewer pipe.
 {¶ 6} Mathis and Ray Connaughton, the owner of Allied since 1985, were the only two witnesses to testify at trial. Mathis testified that her drains were not backing up until after Allied had worked on her sewer pipe. She did not know the specific type of equipment or the specific procedures the Allied employees had used on the pipe, but she had observed that the second plumbing company had pulled the cable and some tree roots out of the affected area of the sewer pipe. And she claimed that she had seen the affected portion of her pipe and that it had not collapsed.
 {¶ 7} Connaughton did not have any firsthand knowledge of the incident. Nonetheless, he testified that, based upon company records and his conversations with Allied's serviceman, the dispatcher, and the field supervisor, normal sewer and drain procedures had not worked to clear the pipe. The serviceman had run a ¾ -inch cable with a four-inch half blade in Mathis's main sewer line, and the cable had become stuck after approximately 80 feet. He added that the machines, the cables, and the blades used by Allied did not damage pipes and that Mathis's problem was caused by a structural defect in the pipe. He claimed that the structural defect was caused by a mass infiltration of roots that had "choked off the pipe" or by a total collapse of the pipe. He added that if a pipe was structurally damaged, then it had to be replaced.
 {¶ 8} The trial court found in favor of Mathis and awarded damages in the amount of $2,312. In assessing liability, the court inferred Allied's negligence under the legal doctrine of res ipsa loquitur. The court inferred negligence because Mathis's *Page 4 
basement drain was not backing up with sewage until after the cable had become stuck in the sewer pipe.
 {¶ 9} Allied now raises two assignments of error on appeal. First, Allied argues that the trial court erred by inferring negligence under the theory of res ipsa loquitur. Second, Allied argues that the trial court's decision was against the manifest weight of the evidence.
 Res Ipsa Loquitur {¶ 10} We begin by reviewing whether the trial court properly applied the doctrine of res ipsa loquitur in this case. Res ipsa loquitur is a rule of evidence that permits the trier of fact to infer negligence on the part of the defendant from the circumstances surrounding the injury to the plaintiff.[1] To benefit from the application of the rule, a plaintiff must offer evidence that "the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant" and that "the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed."[2] Whether this burden has been met is a question of law for the trial court.[3] We review the trial court's determination de novo.[4]
 {¶ 11} Upon review of the record, we are unable to sustain the trial court's decision to apply the doctrine of res ipsa loquitur under these facts. Even if we assume that Mathis adduced evidence to meet the first part of the inquiry, she did not adduce evidence that in the ordinary course of events the cable would not have become stuck if ordinary care had been observed. We cannot overlook the possibility that the cable could *Page 5 
have become stuck without any fault on the part of Allied because of a structural deficiency that existed in Mathis's pipe prior to Allied's endeavors.
 Implied Duty to Perform in a Workmanlike Manner {¶ 12} For Mathis to recover from Allied for the cost of removing the cable under negligence principles, she was required to prove that Allied had breached an implied duty to perform the service in a workmanlike manner, using ordinary care, and that this failure had proximately caused her damages.[5]
 {¶ 13} "[T]he implied duty to perform in a workmanlike manner is not a guarantee of the results of a repair";[6] rather, the implied duty simply requires that those who repair or modify existing tangible goods or property perform their services using "proper materials and workmanlike skill and judgment."[7]
 {¶ 14} "A `workmanlike manner' is defined in terms of how work is customarily performed by others in the same trade in the same community or the same type of work. Hence it is viewed by reference to what those having the knowledge, training, or experience necessary for the successful practice of a trade or occupation would consider to be generally proficient."[8] Testimony of an "expert" is not necessarily required; the level of assistance needed by the trier of fact in assessing liability depends upon the nature of the service that was provided.[9]
 {¶ 15} We now decide whether the trial court's judgment in favor of Mathis was against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a *Page 6 
reviewing court as against the manifest weight of the evidence."[10]
In Burkett v. JRP Plumbing, the Tenth Appellate District addressed the liability of a plumbing company after a serviceman's cable became stuck in the plaintiffs sewer line during a service call. After judgment was entered for the plaintiff, the plumbing company appealed and argued that the judgment was against the manifest weight of the evidence. The appellate court upheld the judgment, relying upon the testimony of a line inspector who had witnessed the repair of the plaintiffs sewer line and the removal of the defendant's cable. The inspector testified that the cable removed from the line did not include the cutting tip that was used to clear out tree roots. As a result, according to the inspector, the cable had become entangled in the root obstruction instead of cutting it. He also testified that the servicemen should have detected the entanglement, but had not, and that he had fed too much cable into the sewer line.
 {¶ 16} In this case, the only evidence Mathis presented to establish Allied's negligence in clearing the pipe was her own testimony that the pipe section had not appeared to be collapsed, and that other plumbing companies had cleared her sewer pipe of tree roots without incident. This evidence was not competent to establish that Allied had failed to perform in a workmanlike manner or that its work had proximately caused the damage to her sewer pipe. Thus, we conclude that the trial court's judgment on the negligence claim for pipe-repair damages was against the manifest weight of the evidence.
 {¶ 17} Conversely, we uphold the trial court's judgment for Mathis on her negligence claim for carpet-cleaning damages. Mathis presented unrebutted evidence that the Allied employees had not specifically informed her that the cable remained in the pipe and that she could no longer use her plumbing without sewage backing up into her house. This conduct by Allied's employees amounted to a failure to perform in a workmanlike *Page 7 
manner as a matter of law, at the very least. And because Mathis did not have this information, she continued to use her plumbing instead of waiting for repairs. Thus, Allied's failure was the proximate cause of her soiled-carpet damage. The trial court's judgment in her favor on this claim was not against the manifest weight of the evidence.
 Other Legal Theories {¶ 18} Mathis argues that she could have prevailed against Allied on three other legal theories: continuing trespass, conversion, and breach of contract. She argues that Allied had committed a continuing trespass by refusing to remove its cable. But Allied did not refuse to remove its equipment; it demanded payment for the removal. Mathis argues also that Allied had converted her property by altering the drain pipe in a manner that she did not authorize. But Mathis did authorize Allied to alter the drain pipe. Whether it did so in the manner she authorized pursuant to the contract requires an examination of whether Allied breached an express warranty or an implied duty to perform in a workmanlike manner.[11] And where Mathis did not negotiate for an express warranty, she was limited to recovery under the implied duty of Allied to perform in a workmanlike manner.[12]
 Conclusion {¶ 19} In conclusion, we hold that the trial court erred by applying the doctrine of res ipsa loquitur and finding in favor of Mathis on that basis. Further, although Mathis established as a matter of law that Allied's failure to inform her that she could not use her plumbing was a failure to perform in a workmanlike manner, she did not present competent, credible evidence that Allied had failed to perform the actual repair of the pipe in a workmanlike manner. As a result, her damages were limited to her carpet-cleaning costs. Therefore, we reverse that part of the trial court's judgment awarding Mathis *Page 8 
damages for the repair of the sewer line and enter judgment for Mathis in the amount of $112.50 plus costs.
Judgment accordingly.
SUNDERMANN, P.J., CUNNINGHAM and DINKELACKER, JJ.
[1] Hake v. Wiedemann Brewing Co. (1970), 23 Ohio St.2d 65, 66,262 N.E.2d 703.
[2] Id. at 66-67.
[3] Id. at 67.
[4] Id.
[5] See Mitchem v. Johnson (1966), 7 Ohio St.2d 66, 218 N.E.2d 594;Loukinas v. Roto-Rooter Serv. Co., 167 Ohio App.3d 559, 2006-Ohio-3172,855 N.E.2d 1272, at ¶ 10.
[6] Day-Glo Color Corp. v. Brewer-Garrett Co., 8th Dist. No. 87838,2007-Ohio-159, at ¶ 7.
[7] Id. at ¶ 6, citing Mitchem, supra.
[8] Id. at ¶ 7.
[9] See Floyd v. United Home Improvement Ctr., Inc. (1997),119 Ohio App.3d 716, 721-722, 696 N.E.2d 254.
[10] C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
[11] See Mitchem, supra.
[12] Id. *Page 1