[Cite as *Scott v. First Choice Auto Clinic, Inc.*, 2023-Ohio-3855.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Geoffrey P. Scott,                                     :

      Plaintiff-Appellee,                     :             No. 23AP-48
                                                                              (C.P.C. No. 19CV-725)
v.                                                           :

First Choice Auto Clinic, Inc.                    :             (ACCELERATED CALENDAR)
c/o Brian K. Newsom, statutory agent et al.,
                                                               :

      Defendants-Appellants.                :

                                                               :

D E C I S I O N

Rendered on October 24, 2023

**On brief:** *E. Ray Critchett*, *LLC*, and *E. Ray Critchett*, for
appellee.  **Argued:** *E. Ray Critchett*.

**On brief:** *Eric E. Willison*, for appellants.  **Argued:** *Eric E.
Willison*.

APPEAL from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1}  Defendants-appellants, First Choice Auto Clinic, Inc. ("First Choice") and
Brian K. Newsom, appeal a judgment of the Franklin County Court of Common Pleas in
favor of plaintiff-appellee, Geoffrey P. Scott.  For the following reasons, we affirm that
judgment in part and reverse it in part, and remand this case.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  Scott owns a 1963 Austin-Healy 3000 Mark II BJ-7 sports convertible.  In
2016, Scott decided to restore the car and hired First Choice to assist him in the restoration.
Newsom is the owner and operator of First Choice.

{¶ 3}  The parties agreed that the project would consist of two phases.  In the first
phase, First Choice would restore the frame and chassis.  First Choice would separate the
front and rear bulkheads from the old frame, media blast all steel components, repair

and/or remove and replace all corroded components of the front and rear bulkheads, reattach the repaired front and rear bulkheads to the new frame, and install new floor pans. First Choice would then weld, seam seal, and paint with epoxy primer all the components. At that point, First Choice would return the car to Scott so he could reinstall the engine, brakes, transmission, and the suspension, steering, and electrical systems.  During the second phase, First Choice was to reinstall the outer "skin" of the car, including the paneling, doors, and front and rear shroud.  (Tr. at 35.)  Finally, First Choice would paint the car.

{¶ 4}   Although Scott asked Newsom to "do the best you can to tell me what you think we are getting into," Newsom did not provide Scott with an estimate for the cost or duration of the restoration project.  (Pl.'s Ex. 4.)  Newsom, instead, generally cautioned Scott that "[t]he restoration process can be long, expensive, and complicated."  (Pl.'s Ex. 3, Restoration Guidelines.)   He provided Scott with a document entitled "Restoration Guidelines," which stated that restoration projects were "NOT priced in advance" and were "[b]ooked and worked on [a] limited basis as capacity permits—FLEXIBILITY IS REQUIRED."  (Emphasis sic.)  (Pl.'s Ex. 3, Restoration Guidelines.)

{¶ 5}   Scott delivered the original and new component parts for the restoration project to First Choice in September 2016.  Around the same time, Scott paid First Choice a deposit of $2,000.  In March 2017, Scott paid First Choice $6,000 for work performed on the project.  In April 2017, Scott paid an additional $7,308 after Newsom told him that First Choice had completed phase one of the project.  However, when Scott came to pick up the car in May 2017, he discovered that he owed $1,290 more.  Scott paid that bill so First Choice would release the car to him.  In total, phase one cost Scott $16,598.

{¶ 6}   During summer 2017, Scott installed the mechanical systems in the car. Scott returned the car to First Choice for phase two of the restoration project in September 2017.

{¶ 7}   On October 13, 2017, Newsom called Scott and told him that "nothing is lining up on your car." (Tr. at 51.)  The alignment issues meant that the exterior panels did not align or fit properly on the chassis, the rear shroud blocked the bumper brackets from attaching to the frame, and the doors could not close.  Newsom and the body shop manager, Denny Foit, blamed the misalignment on the technician who did the phase one work on the car.  Newsom and Foit said that when the technician was determining where to place the

bulkheads on the frame during phase one, he "just dropped the rear shroud on the back end of the car without really affixing it in a proper location." (Tr. at 58.) Consequently, the technician welded the front and rear bulkheads in the wrong position on the frame.

{¶ 8} In trying to get the exterior panels to align and fit, First Choice destroyed the left and right inner wings. Newsom told Scott that he needed new ones, and Newsom offered to pay for them. Scott purchased two new inner wings, which cost a total of $325.77, and provided them to Newsom. Newsom did not reimburse Scott. Scott also had to buy new left and right wheel arches when First Choice irreparably damaged the ones it had already installed in an attempt to fix the alignment issues. The new wheel arches cost Scott $1,059.98.

{¶ 9} First Choice ultimately removed and repositioned the rear bulkhead. This fix allowed the bumper brackets to attach to the frame. However, the other alignment problems persisted.

{¶ 10} On November 15, 2017, Scott informed Newsom that he wanted to have the Healy "on the road by March 1." (Pl.'s Ex. 11.) Newsom replied that "[w]e will have it done [before] th[e]n." (Pl.'s Ex. 11.)

{¶ 11} Unfortunately, Newsom did not keep his word. In March 2018, Scott visited First Choice and found his unfinished car under debris and car parts. When Scott asked Newsom when he was going to finish the project, Newsom asked for an additional $5,000 payment. Scott then began looking for another repair shop, and eventually transferred his car to AA Customs. Scott paid AA Customs $8,025 to correct the alignment problems. AA Customs also completed phase two of the restoration project.

{¶ 12} On January 25, 2019, Scott filed suit against defendants, asserting claims for breach of contract, violations of the Ohio Consumer Sales Practices Act ("CSPA"), unjust enrichment, respondeat superior, and fraud or, alternatively, negligent misrepresentation. Defendants answered the complaint. Additionally, First Choice filed a counterclaim, which asserted claims for breach of contract, unjust enrichment, and promissory estoppel.

{¶ 13} Scott moved for summary judgment on his claim for certain violations of CSPA. Defendants did not oppose the motion. In a judgment entry dated October 15, 2019, the trial court granted Scott's motion. The trial court found defendants committed three deceptive acts or practices that violated the CSPA: (1) defendants failed to provide Scott with a form that included a description of the work to be performed, the estimated

completion date, and the anticipated cost of the repairs or services in violation of Ohio Adm.Code 109:4-3-13(A)(1); (2) defendants failed to obtain authorization from Scott for the anticipated cost of any additional, unforeseen, but necessary repairs or services when the cost of those repairs or services amounted to 10 percent or more (excluding tax) of the original estimate in violation of Ohio Adm.Code 109:4-3-13(C)(2); and (3) defendants allowed eight weeks to elapse after accepting money for services without completing the services, making a full refund, advising Scott of the duration of an extended delay and offering to send a refund in two weeks if so requested, or furnishing services of equal or greater value in violation of Ohio Adm.Code 109:4-3-09(A)(2). The trial court found that issues of fact remained regarding the damage sustained as a result of these violations, which required a trial.

{¶ 14} On May 24, 2021, a trial before a magistrate occurred addressing damages for the CSPA claims, as well as Scott's remaining claims and First Choice's counterclaims. The magistrate issued her decision on August 24, 2021. In her decision, the magistrate recommended the trial court find defendants liable for breach of contract, fraud, negligent misrepresentation, respondeat superior, and unjust enrichment. Regarding the CSPA violations, the magistrate found actual damages in the amount of $16,598.00, which the magistrate trebled for a total of $49,794.00. The magistrate also recommended awarding Scott $10,391.75 in attorney fees under the CSPA. Finally, as a result of the negligent workmanship that breached the parties' contract, the magistrate determined that Scott incurred out-of-pocket expenses of $9,409.00, and recommended an award of damages in that amount.

{¶ 15} Defendants objected to the magistrate's decision. Scott responded to the objections. On January 24, 2022, the trial court issued a judgment overruling defendants' objections. The trial court entered judgment in Scott's favor in the amounts set forth in the magistrate's decision on February 7, 2022.

{¶ 16} Defendants appealed the February 7, 2022 judgment to this court. We, however, determined that we lacked the subject-matter jurisdiction necessary to review the judgment. *Scott v. First Choice Auto Clinic, Inc.*, 10th Dist. No. 22AP-157, 2022-Ohio-3405, ¶ 16. Because the trial court failed to enter judgment on First Choice's counterclaims, the February 7, 2022 judgment did not resolve all the pending claims. *Id.* at ¶ 14. To be

final and appealable, therefore, the judgment had to include Civ.R. 54(B) language, but it did not. *Id.* Consequently, we dismissed defendants' appeal. *Id.* at ¶ 17.

{¶ 17} After the dismissal of the appeal, the trial court referred the matter to the magistrate to render an amended decision. In her November 7, 2022 amended decision, the magistrate recommended granting judgment in Scott's favor on First Choice's counterclaims for breach of contract, promissory estoppel, and unjust enrichment. On December 21, 2022, the trial court issued a judgment adopting the magistrate's amended decision and again entering judgment in Scott's favor in the amount of $49,794.00 in damages for his CSPA claim, $10,391.75 in attorney fees for his CSPA claim, and $9,409.00 in damages for his breach-of-contract claim. The trial court also entered judgment for Scott on First Choice's counterclaims.

## II. ASSIGNMENTS OF ERROR

{¶ 18} Defendants now appeal the December 21, 2022 judgment, and they assign the following five errors for our review:

> [1.] The Trial Court erred when it overruled the Appellants' objection to an award by the Magistrate on the grounds of both Breach of Contract and Unjust Enrichment.
>
> [2.] The Trial Court * * * erred when it overruled the Appellants' objection to the Magistrate's Award of treble damages.
>
> [3.] The Trial Court erred when it overruled the Appellants' objection to an award of the Magistrate regarding the award of attorney fees to Appellee.
>
> [4.] The Trial Court erred when it overruled the Appellants' objections to an award of the Magistrate which was based upon hearsay evidence supposedly redacted.
>
> [5.] The Trial Court erred when it did not overrule the finding of the Magistrate [that] Appellants had engaged in fraud and negligent misrepresentation.

## III. STANDARD OF REVIEW

{¶ 19} An appellate court invariably reviews questions of law de novo. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 16-17; *U.S. Bank Natl. Assn. v. Clarke*, 10th Dist. No. 15AP-880, 2016-Ohio-8435, ¶ 17. In all other respects, an appellate court generally reviews a trial court's judgment adopting a magistrate's decision for an abuse of

discretion. *4030 W. Broad, Inc. v. Neal*, 10th Dist. No. 20AP-31, 2021-Ohio-3685, ¶ 22; *Longmire v. Danaci*, 10th Dist. No. 19AP-770, 2020-Ohio-3704, ¶ 20. An abuse of discretion occurs when a trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). In an exception to the abuse-of-discretion standard, an appellate court applies plain-error review when an appellant fails to preserve through objection before the trial court the issue he raises on appeal by assignment of error. *Longmire* at ¶ 20, 22.

## IV. LEGAL ANALYSIS

{¶ 20} By their first assignment of error, defendants argue the trial court erred in overruling their objection to the magistrate's finding that they were liable for both breach of contract and unjust enrichment. We agree.

{¶ 21} Generally, Ohio law bars a claim for unjust enrichment when an express contract covers the same subject matter. *Bunta v. Superior VacuPress, L.L.C.*, ___ Ohio St.3d ___, 2022-Ohio-4363, ¶ 36; *Lakhi v. Meritra Health Care, L.L.C.*, 10th Dist. No. 21AP-480, 2022-Ohio-3062, ¶ 41; *Guaranteed Constr. Servs., L.L.C. v. Grand Communities, Ltd.*, 10th Dist. No. 17AP-213, 2017-Ohio-9288, ¶ 31. Unjust enrichment is an alternative theory of recovery, which operates in the absence of an express contract, to prevent a party from retaining money or benefits that in justice and equity belong to another. *McDermott v. Ohio State Univ.*, 10th Dist. No. 22AP-76, 2022-Ohio-4780, ¶ 22, *appeal accepted*, 169 Ohio St.3d 1500, 2023-Ohio-1326.

{¶ 22} In this case, the trial court found that the parties entered into an oral contract for the restoration of Scott's car. Scott argues that because the parties' contract was oral, it did not constitute an express contract. Scott is mistaken. " '[A]n express contract connotes an exchange of promises where the parties have communicated in some manner the terms to which they agree to be bound.' " *Matlock v. Reck*, 2d Dist. No. 27692, 2018-Ohio-1650, ¶ 56, quoting *Keybank Natl. Assn. v. Mazer Corp.*, 188 Ohio App.3d 278, 2010-Ohio-1508, ¶ 32 (2d Dist.) (Further citation and quotation omitted.). Express contracts can be written or oral. *Baker & Hostetler, L.L.P. v. Delay*, 10th Dist. No. 08AP-1007, 2009-Ohio-2507, ¶ 19.

{¶ 23} Because an express oral contract between the parties existed, Scott's claim for unjust enrichment had to fail. Legally, Scott could not prevail on both claims. Therefore,

the trial court erred in not sustaining defendants' objection that they should not be held liable on both the breach-of-contract claim and the unjust-enrichment claim.

{¶ 24} Defendants next argue the trial court erred in overruling their objection to the magistrate's finding that they breached the contract by not completing the restoration project in a workmanlike manner. Defendants contend expert testimony was needed to establish the workmanship standards for classic car restoration. According to defendants, the lack of expert testimony precluded the trial court from concluding that defendants breached the contract through unworkmanlike conduct. We are not persuaded by this argument.

{¶ 25} Defendants admitted that they represented to Scott "that they had the knowledge, skill and expertise to complete the [r]estoration [p]roject in a workmanlike manner." (Defs.' Answer to Req. for Admis. No. 20 at 13.) Apparently, both parties presume that a contractual term obligating defendants to perform the restoration project in a workmanlike manner arose from this representation.

{¶ 26} A party need not present expert testimony where the subject of an inquiry is within the common, ordinary experience and knowledge of a layperson. *Jones v. Hawkes Hosp. of Mt. Carmel*, 175 Ohio St. 503 (1964), paragraph one of the syllabus. On the other hand, "where the inquiry pertains to a highly technical question of science or art or to a particular professional or mechanical skill," expert testimony is required. *Id.*; *accord* Evid.R. 702 (allowing expert testimony where the testimony relates to matters beyond the knowledge or experience of laypersons; the witness is qualified by specialized knowledge, skill, experience, training, or education; and the testimony is based on reliable scientific, technical, or other specialized information).

{¶ 27} " 'A "workmanlike manner" is defined in terms of how work is customarily performed by others in the same trade in the same community or the same type of work.' " *Mathis v. Allied Plumbing & Sewer Servs., Inc.*, 1st Dist. No. C-061005, 2007-Ohio-6661, ¶ 14, quoting *Day-Glo Color Corp. v. Brewer-Garrett Co.*, 8th Dist. No. 87838, 2007-Ohio-159, ¶ 7. An expert witness is not always needed to show a deviation from common standards of workmanship. *Morris v. Gedraitis*, 5th Dist. No. 22-COA-030, 2023-Ohio-2317, ¶ 54; *Mathis* at ¶ 14; *Loukinas v. Roto-Rooter Servs. Co.*, 167 Ohio App.3d 559, 2006-Ohio-3172, ¶ 24 (1st Dist.). If the evidence establishing the deviation is neither highly scientific nor technical, then expert testimony is neither necessary nor required.

*Reamensynder v. Marino*, 11th Dist. No. 2018-T-0039, 2018-Ohio-5336, ¶ 6; *Fullenkamp v. Homan*, *Inc.*, 3d Dist. No. 10-05-16, 2006-Ohio-4191, ¶ 12.

{¶ 28} This case is similar to *Loukinas*. In *Loukinas*, the plaintiffs sued Roto-Rooter for negligently installing an oil-interceptor system. Specifically, the plaintiffs claimed that Roto-Rooter performed the installation in an unworkmanlike manner by breaking the clay drain line with its backhoe during installation. *Id*. at ¶ 5. In response to Roto-Rooter's motion for summary judgment, the plaintiffs offered evidence that Roto-Rooter's service manager admitted to one of the plaintiffs that Roto-Rooter had crushed the clay drain line. *Id*. at ¶ 25. The First District Court of Appeals determined that this admission provided evidence that Roto-Rooter's conduct fell below the standard of workmanlike care, thus obviating the need for expert testimony on that element. *Id*. at ¶ 27.

{¶ 29} In this case, the magistrate found:

> 43. Defendants informed Mr. Scott that an employee had made several mistakes in setting up and welding the components together.
>
> 44. Mr. Newsom admitted a substantial portion of the Phase 1 work was done incorrectly * * *.

(Mag.'s Am. Decision, Findings of Fact from the Bench Trial at ¶ 43-44.) Scott's testimony supports these findings, and defendants do not challenge them on appeal. Given that defendants admitted to "mistakes" and "incorrectly" performing the restoration work, a layperson could adjudge whether defendants performed in accordance with the workmanlike standards using ordinary knowledge and experience. Like the plaintiffs in *Loukinas*, Scott did not need an expert witness to testify to the applicable workmanlike standards. Defendants' admissions constituted evidence that defendants' conduct did not meet the workmanlike standards. Consequently, the trial court did not err in overruling defendants' objection that Scott failed to prove a breach of contract occurred.

{¶ 30} In sum, we determine the trial court erred in finding defendants liable for unjust enrichment, but the trial court did not err in finding defendants liable for breach of contract. Accordingly, we sustain defendants' first assignment of error in part and overrule it in part.

{¶ 31} By their second assignment of error, defendants argue the trial court erred when it overruled their objections to the award of treble damages under the CSPA. We agree.

{¶ 32} The CSPA prohibits unfair, deceptive, and unconscionable acts and practices in consumer sales transactions. R.C. 1345.02 and 1345.03. R.C. 1345.09 provides the remedies available to a consumer for a CSPA violation, including rescission, damages, and equitable relief. Where a consumer has been subjected to an unfair, deceptive, or unconscionable act or practice, the consumer must choose between rescinding the transaction and recovering actual economic damages. R.C. 1345.09(A). The consumer's remedy options expand, however, "if the violation [was] an act or practice that was declared to be deceptive or unconscionable by a rule adopted by the Attorney General before the consumer transaction on which the [consumer's] action is based, or if the violation is an act or practice that was determined by a court to violate the CSPA and the court's decision was available for public inspection in accordance with R.C. 1345.05(A)(3) before the consumer transaction." *Marrone v. Phillip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, ¶ 1, citing R.C. 1345.09(B). If either of those two circumstances apply, then the consumer may rescind the transaction or recover "three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater," plus noneconomic damages. R.C. 1345.09(B).

{¶ 33} Rescission and damages are mutually exclusive remedies; not cumulative cures for the same conduct. *Cartwright v. Beverly Hills Floors, Inc.*, 7th Dist. No. 11 MA 109, 2013-Ohio-2266, ¶ 44; *Ferron v. Video Professor, Inc.*, 5th Dist. No. 08-CE-09-0055, 2009-Ohio-3133, ¶ 55; *Mike Castrucci Ford Sales, Inc. v. Hoover*, 12th Dist. No. CA2007-02-022, 2008-Ohio-1358, ¶ 16; *Eckman v. Columbia Oldsmobile, Inc.*, 65 Ohio App.3d 719, 722 (1st Dist.1989). Consequently, a consumer must choose between the two remedies. *Cartwright* at ¶ 44; *Ferron* at ¶ 55; *White v. Lima Auto Mall*, 3d Dist. No. 1-07-86, 2008-Ohio-2403, ¶ 28; *Hoover* at ¶ 16; *Eckman* at 722.

{¶ 34} "Actual economic damages" are "damages for direct, incidental, or consequential pecuniary losses resulting from a violation of Chapter 1345. of the Revised Code." R.C. 1345.09(G). " 'Actual damages' are defined as 'real, substantial, and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury.' " *Whitaker v. M.T. Auto, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, ¶ 18,

quoting *Crow v. Fred Martin Motor Co.*, 9th Dist. No. 21128, 2003-Ohio-1293, ¶ 32. "Actual damages do not equate to the contract price, especially where the seller has fully performed, albeit unsatisfactorily." *Garber v. STS Concrete Co., L.L.C.*, 8th Dist. No. 99139, 2013-Ohio-2700, ¶ 21; *accord Hamilton v. Ball*, 4th Dist. No. 13CA3533, 2014-Ohio-1118, ¶ 65 (holding that "the trial court did not err in failing to award three times the contract price as damages" under the CSPA).

{¶ 35} Rescission restores the parties to their original positions before entering the transaction. *Mid-America Acceptance Co. v. Lightle*, 63 Ohio App.3d 590, 599 (10th Dist.1989). Consequently, if the consumer chooses rescission, he is entitled to recover whatever he has already paid for the transaction, as well as out-of-pocket expenses. *Id.*; *Averback v. Montrose Ford, Inc.*, 9th Dist. No. 28875, 2019-Ohio-373, ¶ 40-41. "However, if the consumer elects rescission, while he is entitled to be restored the amounts [he] paid to the [violating] party, he is not entitled to three times that amount." *Lightle* at 600; *accord Cartwright* at ¶ 45 (holding the plaintiff was only entitled to a refund of the deposit he paid for the tile he purchased, not three times the deposit amount); *Cremeans v. Robbins*, 4th Dist. No. 99 CA 2520 (June 12, 2000) (holding the plaintiff was not entitled to three times the amount she paid on the transaction). Under R.C. 1345.09(B), a court may only treble actual economic damages. *Lightle* at 600.

{¶ 36} In this case, the trial court found defendants had committed three acts that were declared deceptive by a rule adopted by the Attorney General prior to the filing of Scott's action against defendants. Scott, therefore, was entitled to either rescission or actual economic damages under R.C. 1345.09(B). Scott elected to receive actual economic damages as his remedy for defendants' violations of the CSPA. The magistrate found Scott sustained $16,598 in actual economic damages. In essence, the magistrate restored to Scott the amount he paid under his contract with First Choice. But this is an award recoverable if a consumer chooses the remedy of rescission, not actual economic damages. *See Garber* at ¶ 21; *Lightle* at 599-600.

{¶ 37} To support the damages award, the magistrate found that:

> 8. Mr. Scott was financially harmed by Defendants' failure to provide him with a right to cancel notification, estimate of costs and/or time frame for completion of the project. In particular, Mr. Scott felt as though he was stuck with the Defendants to complete the project, he was subjected to

> random invoices for worked [sic] performed as opposed to
> proposed estimates[,] and he knew it would be difficult to
> retain a new body shop to take on a "problem" project. As the
> result of the CSPA violations, Mr. Scott paid Defendants
> $16,598.00 * * *.

(Mag.'s Am. Decision, Conclusions of Law at ¶ 8.)

**{¶ 38}** As we stated above, "actual economic damages" are "damages for direct, incidental, or consequential pecuniary losses resulting from a violation of Chapter 1345. of the Revised Code." R.C. 1345.09(G). Thus, to recover actual economic damages, a consumer must show pecuniary losses because of a violation of the CSPA. Here, Scott encountered problems due to defendants' violations of CSPA: he felt "stuck" with First Choice, he received invoices from First Choice after work was completed, and he had a tough time finding a new repair shop. (Mag.'s Am. Decision, Conclusions of Law at ¶ 8.) Although the magistrate characterized these problems as "financial[] harm[s]," Scott did not present any evidence as to how the problems caused him any pecuniary loss. (Mag.'s Am. Decision, Conclusions of Law at ¶ 8.)

**{¶ 39}** On appeal, Scott argues he demonstrated at trial the work defendants performed had no value, and therefore, his actual economic damages under the CSPA amounted to $16,598. In short, Scott claims he incurred actual economic damages by paying $16,598 for valueless work. However, to recover actual economic damages under the CSPA, Scott had to show that *a violation of the CSPA* caused him pecuniary loss. R.C. 1345.09(G). First Choice's work had no value due to poor workmanship, so Scott sustained pecuniary loss due to poor workmanship. Importantly, Scott did not prove a CSPA violation based on poor workmanship. Scott only proved more technical violations of the CSPA: failing to provide a cost estimate or anticipated date of completion, failing to obtain authorization for services, and allowing excessive delay. Consequently, Scott failed to show that a violation of the CSPA caused him to pay $16,598 for valueless work, so he cannot recover actual economic damages under the CSPA.

**{¶ 40}** In sum, the amount Scott paid on the contract does not constitute actual economic damages. Furthermore, Scott did not provide any evidence of actual economic damage. A party must sustain actual economic damages for a trial court to award treble damages. *Williams v. Kia of Beford*, 8th Dist. No. 105616, 2018-Ohio-283, ¶ 24. The trial court, therefore, erred in approving the magistrate's trebling of the damages award.

{¶ 41} Accordingly, we conclude the trial court erred in overruling defendants' objection to the award of treble damages under the CSPA. We thus sustain the second assignment of error.

{¶ 42} Given our ruling on the second assignment of error, we must remand this case to the trial court. A consumer who proves a CSPA violation is guaranteed a minimum award of $200 in statutory damages under R.C. 1345.09(B). *Averback* at ¶ 36. Although Scott did not prove actual economic damages, he is entitled to statutory damages under R.C. 1345.09(B). The trial court, therefore, must redetermine the amount of damages defendants owe for their violations of the CSPA.

{¶ 43} By their third assignment of error, defendants argue the trial court erred in overruling their objections to the magistrate's award of attorney fees to Scott pursuant to the CSPA. We disagree.

{¶ 44} Under the CSPA, the trial court "may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed" if "[t]he supplier has knowingly committed an act or practice that violates" the CSPA. R.C. 1345.09(F)(2). In this case, the trial court awarded Scott reasonable attorney fees in the amount of $10,391.75 under this provision.

{¶ 45} When ruling on a request for attorney fees, a trial court must determine the "lodestar," which is the attorney's reasonable hourly rate multiplied by the number of hours reasonably worked on the litigation. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145 (1991). There is a strong presumption that the lodestar amount is the proper amount for an attorney-fee award. *Phoenix Lighting Group, L.L.C. v. Genlyte Thomas Group, L.L.C.*, 160 Ohio St.3d 32, 2020-Ohio-1056, ¶ 19. The party seeking attorney fees bears the burden of proving the reasonableness of the fees. *Law Offices of Russell A. Kelm v. Selby*, 10th Dist. No. 15AP-1135, 2017-Ohio-8239, ¶ 29; *Columbus Truck & Equip. Co. v. L.O.G. Transp., Inc.*, 10th Dist. No. 12AP-223, 2013-Ohio-2738, ¶ 19. "An award of attorney fees must be based on actual services performed, and there must be some evidence supporting the court's determination." *Selby* at ¶ 29; *accord In re Estate of Schwenker*, 10th Dist. No. 18AP-320, 2019-Ohio-2581, ¶ 10 (stating that "the evidence * * * must substantiate the award of fees as being reasonable"). Evidence showing the reasonableness of the attorney fees may take the form of testimony, affidavits, answers, or other forms of sworn evidence. *Ackison v. Gergley*, 5th Dist. No. 2021 CA 00087, 2022-Ohio-3490, ¶ 54; *Christen v.*

*Continental Ents., Ltd.*, 8th Dist. No. 108736, 2020-Ohio-3665, ¶ 36; *Marshall & Melhorn, L.L.C. v. Sullinger*, 6th Dist. No. L-18-1218, 2020-Ohio-1240, ¶ 51.

**{¶ 46}** Defendants argue the evidence does not establish the reasonableness of the time spent on the litigation or the reasonableness of the attorney's hourly rate. To prove the reasonableness of his attorney's fees, Scott relied on his own testimony. Scott explained that he, too, is an attorney. He has practiced since 1998 and works primarily in probate and estate planning. Scott previously worked on matters for clients of his attorney, E. Ray Critchett. Scott also referred his clients to Critchett when they needed a litigation attorney.

**{¶ 47}** Scott introduced into evidence the invoice he had received from Critchett that listed by date each period of time Critchett worked on Scott's case, described the work Critchett performed, and stated the amount charged for the work. Scott reviewed the invoice and identified it as "a true and accurate copy of all the hours [Critchett] had put into [the] case." (Tr. at 19.) He further added, "[a]ll those things [in the invoice] look like they're reasonable things I've asked you [i.e., Critchett] to do and do for me." (Tr. at 19.) Moreover, Scott testified that Critchett's hourly rate—$250—was a reasonable hourly rate.

**{¶ 48}** Defendants objected to the introduction of the invoice on grounds that Scott failed to lay a proper foundation for its admission into evidence. Evid.R. 901 requires authentication or identification of evidence as a condition precedent to admissibility. Evidence may be authenticated by the testimony of a witness "with knowledge * * * that a matter is what it is claimed to be." Evid.R. 901(B)(1). "The threshold for authentication is low: [t]he proponent need not offer conclusive evidence as a foundation but must merely offer sufficient evidence to allow the question as to authenticity or genuineness to reach the jury." *State v. McCarrel*, 10th Dist. No. 18AP-660, 2019-Ohio-2984, ¶ 37 (citations and quotations omitted); *accord State v. Schulman*, 10th Dist. No. 19AP-566, 2020-Ohio-4146, ¶ 29, quoting *State v. Renfro*, 12th Dist. No. CA2011-07-142, 2012-Ohio-2848, ¶ 30 (stating that the proponent of the evidence "only needs to demonstrate a 'reasonable likelihood' that the evidence is what it claims").

**{¶ 49}** Here, Scott hired Critchett to represent him in the instant litigation. The invoice is addressed to Scott and the entries on the invoice show that Scott and Critchett often discussed developments in the case. By describing the work listed on the invoice as "reasonable things I've asked you to do and do for me," Scott indicated that he took an active role in litigating this case. (Tr. at 19.) Given this evidence, we conclude the trial court did

not abuse its discretion in determining that Scott possessed the requisite knowledge to authenticate the invoice.

{¶ 50} Next, defendants argue that Scott could not testify to the reasonability of the work Critchett performed and Critchett's hourly rate because Scott does not practice in the area of consumer law. At most, Scott's specialty in an area outside of consumer law could only affect the weight of his testimony. *See Baker v. DeRiso*, 6th Dist. No. E-14-137, 2015-Ohio-2440, ¶ 15 (holding, in a medical malpractice case, that "differences in areas of specialization go to the weight evidence is to be given by a fact finder") (Citation and quotation omitted.); *Schooley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 05AP-823, 2006-Ohio-2072, ¶ 13 (stating that "the fact that the [expert witness] has one specialty rather than another bears only upon the weight to be given the evidence, not its admissibility"). When defense counsel contended that Scott lacked the proper qualifications to testify as to the customary hourly rate, the magistrate ruled the objection went to the weight of the evidence and defense counsel agreed. The magistrate ultimately found Scott's testimony persuasive, and the trial court agreed with this assessment. We find no abuse of discretion in this determination.

{¶ 51} The invoice and Scott's testimony provided sufficient basis for an award of $10,391.75 in reasonable attorney fees. The trial court, therefore, did not err in overruling defendants' objection to the magistrate's award of attorney fees. Accordingly, we overrule defendants' third assignment of error.

{¶ 52} By defendants' fourth assignment of error, they argue the trial court erred in overruling their objection to the magistrate's award of damages for the breach-of-contract claim. Defendants maintain the trial court erred because it based the award on hearsay evidence.

{¶ 53} The damages the trial court awarded to Scott for breach of contract include $8,025 that Scott paid AA Customs to correct the alignment problems caused by First Choice. To prove these damages, Scott introduced exhibit 10, which was an invoice he received from AA Customs in the amount of $8,025. Scott explained that he asked AA Customs to separately invoice him for the cost of the corrective work, and the total amount of that invoice, exhibit 10, was $8,025. Defendants did not object to the admission of exhibit 10, but they asked that the magistrate redact the portion of the invoice that

described the work performed as hearsay.  The magistrate granted defendants' request and admitted the redacted exhibit 10 into evidence.

{¶ 54} Defendants now argue the trial court erred in granting Scott $8,025 in damages because the record contains no evidence other than hearsay regarding the specific work AA Customs performed for the $8,025 charge.  However, Scott testified, without objection, that he paid $8,025 for "the corrected work that [AA Customs] would have to do to fix things so that the doors would line up and * * * the alignment would work."  (Tr. at 85.)  Contrary to defendants' argument, the recovery of damages for breach of contract did not hinge on proving the exact tasks AA Customs undertook to correct the alignment problems with the car.  Scott merely had to prove the amount he spent on corrective work, which he established through exhibit 10 (as redacted) and his testimony.

{¶ 55} The trial court, therefore, did not err in overruling defendants' objection to the damages award for the breach-of-contract claim.  Accordingly, we overrule defendants' fourth assignment of error.

{¶ 56} By their fifth assignment of error, defendants argue that, in adopting the magistrate's findings, the trial court erroneously found them liable for fraud and negligent-misrepresentation claims that Scott never pled in the complaint.  This argument fails because defendants do not demonstrate plain error.

{¶ 57} Defendants did not object to the magistrate's decision on the basis that it found them liable for claims not pled in the complaint.  Pursuant to Civ.R. 53(D)(3)(b)(iv), "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion [by a magistrate] * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)."  Thus, if a party does not file an objection to a magistrate's factual finding or legal conclusion, the party has waived the right to appellate review of all but plain error.  *Longmire*, 2020-Ohio-3704, at ¶ 22.  Because defendants failed to object on the basis they now raise, we limit our review to whether the error alleged rises to the level of plain error.

{¶ 58} In civil cases, courts apply the doctrine of plain error "with the utmost caution."  *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121 (1997).  Courts will find that plain error has occurred "only in the extremely rare case involving exceptional circumstances where error * * * seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."

*Id.* at syllabus. Defendants must bear the burden of demonstrating plain error. *Risner v. Ohio Dept. of Natural Resources*, 144 Ohio St.3d 278, 2015-Ohio-3731, ¶ 27.

{¶ 59} In this case, defendants have not advanced any reasons why the alleged error in this case challenges the legitimacy of the underlying judicial process. We are not inclined to conclude that defendants have met this high threshold given that the trial court awarded no damages for the fraud and negligent-misrepresentation claims. Moreover, appellate courts should be hesitant to employ the plain-error doctrine " 'for the reason that justice is far better served when [an appellate court] has the benefit of briefing, arguing, and lower court consideration before making a final determination.' " *Id.* at ¶ 28, quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 332 (1983), fn. 2. Here, due to the belated raising of the alleged error, the record is devoid of any discussion or consideration of a crucial issue: whether the parties tried the fraud and negligent-misrepresentation claims by implied consent. *See* Civ.R. 15(B). Accordingly, we decline to apply the plain-error doctrine, and we overrule the fifth assignment of error.

## V. CONCLUSION

{¶ 60} For the foregoing reasons, we sustain in part and overruled in part the first assignment of error, sustain the second assignment of error, and overrule the third, fourth, and fifth assignments of error. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and we remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment affirmed in part, reversed in part;*
*cause remanded.*

BEATTY BLUNT, P.J., and LELAND, J., concur.

_____