[Cite as *Nicholson v. Davis Auto Performance*, 2024-Ohio-205.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JAMES A. NICHOLSON, | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| DAVIS AUTO PERFORMANCE, | : | Case No. 2023 CA 0022 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:         Appeal from the Richland County
Court of Common Pleas, Case No.
2021 CV 406

JUDGMENT:         Affirmed

DATE OF JUDGMENT:         January 22, 2024

APPEARANCES:

For Plaintiff-Appellee         For Defendant-Appellant

D. KIM MURRAY         HEATHER R. ZILKA
Brown Bemiller Murray & Haring. LLC         ERIC M. HOPKINS
99 Park Avenue West, Suite B         Pelini Campbell & Ricard, LLC
Mansfield, Ohio 44902         5880 Innovation Drive
         Dublin, Ohio 43016

*Baldwin, J.*

**{¶1}** Appellant Davis Auto Performance appeals the decision of the trial court following a bench trial in which the court found it had violated the Ohio Consumer Sales Practices Act, and awarded appellee James A. Nicholson treble damages and attorney fees.

**STATEMENT OF THE FACTS AND THE CASE**

**{¶2}** The appellee, a lieutenant with the county sheriff's office, owns a 1998 Pontiac Bonneville automobile which he purchased new. During the winter of 2020 he was having trouble with the vehicle's heating system, and in early March of 2020 took it to the appellant for replacement of the heater core at the cost of $482.99.

**{¶3}** The day the appellee drove his vehicle home from the appellant's shop, appellee noticed a long trail of coolant in his driveway. The vehicle had not leaked coolant prior to the appellant's heater core replacement service. The appellee contacted the appellant, and returned the vehicle to the appellant's shop. The appellant examined the vehicle and advised the appellee that it needed a new radiator. The appellee authorized the work, and the appellant replaced the radiator at the cost of $353.09. The appellant advised appellee at that time that his vehicle needed new rack and pinion steering, as the current steering system was unsafe. Again, the appellee authorized the work to be done by appellant.

**{¶4}** The appellant billed the appellee for the replacement of the heater core and the replacement of the automobile's steering system on the same invoice, which totaled $1,776.08, and included the $482.99 for replacement of the heater core.

**{¶5}** The appellant had the appellee's vehicle in its shop for an extended period of time to replace the vehicle's steering system. Within that time frame, the appellee was driving past the appellant's business location with a fellow deputy sheriff and observed his vehicle parked in the appellant's parking lot where he had initially parked it for the steering system service. The appellee put his cell phone on speaker, called the appellant, and spoke with the owner, asking him how the work was coming on his vehicle. The owner told the appellee that the vehicle was "on the rack right now" and they "were working on it" as they were speaking. The appellee asked him again if the vehicle was on the rack, and the owner reiterated that it was "on the rack right now" being worked on. The appellee pointed out his vehicle, sitting in the appellant's parking lot, to his fellow deputy. Both the appellee and the deputy testified regarding the appellant's misrepresentation regarding this fact.

**{¶6}** The appellant told the appellee that the steering system work was complete and his vehicle was ready to be picked up, but when he attempted to drive the vehicle the steering was so tight that he could not pull it out of the parking lot. The appellee immediately went back into the appellant's shop told the owner of the steering problem, and again left it with the appellant for further work. It took the appellant another couple of weeks before the work on the vehicle was complete.

**{¶7}** The appellee picked the vehicle up after the appellant's second steering system repair, and while the steering still felt rough it was at least drivable. However, the steering once again locked up, and the appellant took the vehicle to Goodyear Auto Service Center. Goodyear recommended that the appellee take the vehicle to a dealer regarding the steering system issues.

**{¶8}** In addition, the appellee determined that his air conditioning system was not working. Because he was unhappy with the work that had been performed by the appellant, the appellee took the vehicle to Goodyear to have the air condition system looked at. To determine the air conditioning problem, Goodyear had to take the vehicle's dashboard apart at a cost of $432.00. When Goodyear removed the dashboard, it determined that the blend door wiring had been unplugged during earlier servicing, and all that was necessary to restore the air conditioning system to working order was to plug the blend door wiring back in.

**{¶9}** The appellee thereafter took his vehicle to Mansfield GMC, where the rack and pinion steering system installed by the appellant was removed and a new rack and pinion steering system was installed at a cost of $1,203.05. Mansfield GMC's invoice for replacing the rack and pinion steering system was admitted into evidence during the trial without objection, and stated the following:

"c/s is difficult to turn, and steering seems loose

caused by

**inspected steering system found attachment bolt**

for steering rack/pinion missing, also found

steering rack/pinion leaking fluid, steering

rack/pinion appears to be the wrong replacement,

original part has MAGNA steering system

inspected steering column and found lower support

brackett [sic] missing bolts and found rubber hose

between brackets

lower steering shaft bearing

housing broken where mounting bolts would attach"

**{¶10}** The appellee filed a complaint against the appellant on August 17, 2021, and a first amended complaint on August 30, 2021 which set forth allegations that the appellant had violated the Ohio's Consumer Sales Practices Act ("CSPA".) A bench trial was conducted on March 9, 2023. The appellant did not object to the appellee's testimony regarding the repairs to his vehicle, nor to the admission of various invoices, including the Mansfield GMC invoice.

**{¶11}** On March 13, 2023, the trial court issued a Verdict After Bench Trial in which it found that the appellant had violated the CSPA, thus entitling the appellee to treble economic damages in the amount of $7,032.24. The March 13, 2023, Verdict also found that the appellee may be entitled to attorney fees, and scheduled a hearing on the issue of attorney fees on March 31, 2023, at which time the appellee was to present evidence regarding his attorney fees, including expert testimony.

**{¶12}** The attorney fee hearing proceeded as scheduled. The appellee presented the expert testimony of Attorney David D. Carto as to the reasonableness and necessity of the appellee's attorney fees, and submitted an itemized invoice. On April 5, 2023, the trial court issued a Judgment Entry Regarding Plaintiff's Request for Reasonable Attorney Fees in which it awarded the appellee attorney fees in the amount of $7,500.00.

**{¶13}** The appellant filed a timely appeal, and sets forth the following four assignments of error:

**{¶14}** "I. THE TRIAL COURT ERRED IN FINDING A VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT WHEN IT DID NOT FIND DAVIS AUTO COMMITTED AN UNFAIR, DECEPTIVE, OR, UNCONSCIONABLE ACT."

**{¶15}** "II. THE TRIAL COURT ERRED IN AWARDING TREBLE DAMAGES UNDER THE OHIO CONSUMER SALES PRACTICES ACT."

**{¶16}** "III. THE TRIAL COURT ERRED IN AWARDING ATTORNEY FEES UNDER THE OHIO CONSUMER SALES PRACTICES ACT."

**{¶17}** "IV. THE TRIAL COURT'S JUDGMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS IT WAS BASED PURELY ON AN INFERENCE FOUNDED ON HEARSAY AND INAPPROPRIATE LAY OPINION."

**ANALYSIS**

**{¶18}** The appellant argues that the trial court erred when it found that it violated the CSPA, that it erred in awarding treble damages and attorney fees based upon said violation, and that the trial court's decision is against the manifest weight of the evidence. The assignments of error are integrally intertwined, and will therefore be addressed together.

**{¶19}** The CSPA was discussed by this court in *Swoger v. Hogue,* 5th Dist. Tuscarawas No. 2013 AP 011 0045, 2015-Ohio-506:

> The Ohio Consumer Sales Practices Act ("CSPA"), which is codified in R.C. Chapter 1345, prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions. The act is intended to be remedial and should be construed liberally in favor of consumers. *Einhorn v. Ford Motor Co.,* 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990).

Whereas R.C. 1345.02 prohibits unfair or deceptive acts or practices, R.C. 1345.03 prohibits unconscionable acts or practices in connection with consumer transactions, whether such acts or practices occur before, during, or after a transaction. This section lists a number of circumstances to be taken into consideration in determining whether an act or practice is unconscionable. In order to recover for unconscionable acts or practices, the consumer must prove that the supplier acted unconscionably and knowingly. *Karst v. Goldberg,* 88 Ohio App.3d 413, 418, 623 N.E.2d 1348 (1993).

In order to establish a CSPA violation, the court must determine that the transaction between the parties was one to which the CSPA applied. A "consumer transaction" is defined as any "sale, lease, assignment, award by chance, or other transfer of an item of goods * * * to an individual for purposes that are primarily personal, family, or household[.]" R.C. 1345.01(A). However, this statute must be read in conjunction with R.C. 1345.02 and R.C. 1345.03, which provide that a supplier is prohibited from doing certain things "in connection with a consumer transaction." The consumer need not prove the supplier intended to commit an unfair or deceptive act to establish a violation of the CSPA, but need only prove such an act was committed. *Garner v. Borcherding Buick, Inc.,* 84 Ohio App.3d 61, 64, 616 N.E.2d 283 (1992).

To determine if a specific act or practice is a deceptive sales practice which violates the general directive of R.C. 1345.02(A), one must look to

three separate sources. First, R.C. 1345.02(B) contains an enumerated list of practices that are unfair or deceptive. Second, pursuant to R.C. 1345.05(B)(2), the attorney general is authorized to adopt substantive rules defining acts or practices that violate R.C. 1345.02. These rules are found in the Ohio Administrative Code. Third, Ohio courts have defined a variety of specific acts and practices which are unfair or deceptive. *Frey v. Vin Devers, Inc.,* 80 Ohio App.3d 1, 6, 608 N.E.2d 796 (1992). See, also, *Fletcher v. Don Foss of Cleveland, Inc.,* 90 Ohio App.3d 82, 86, 628 N.E.2d 60 (1993).

*Id.* at ¶¶36-39.

**{¶20}** R.C. 1345.02(B)(2) provides that it is deceptive for a supplier to represent that the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not. Thus, work performed by a supplier must be done in a workmanlike manner, and failure to do so may give rise to a violation of the CSPA.

**{¶21}** The case of *Williams v. Sharon Woods Collision Center, Inc.*, 1st Dist. Hamilton No. C-170511, 2018-Ohio-2733, 117 N.E.3d 57 is instructive. In *Williams,* the plaintiff owned a motor vehicle that was involved in an accident. The defendant collision repair business represented that it performed all repairs to manufacturer specifications and industry standards. The plaintiff's vehicle was not, however, repaired according manufacturer specifications, and he filed a complaint alleging violations of the CSPA. The plaintiff presented expert testimony regarding the defendant's failure to repair the vehicle in compliance with manufacturer standards, defendant's incomplete repairs, and repairs

that "had been done in an unworkmanlike and sloppy manner." *Id.* at ¶4. The court applied

the CSPA in the context of, inter alia, the defendant's "shoddy repairs."

{¶22} The case of *Scott v. First Choice Auto Clinic, Inc.,* 10th Dist. Franklin No.

23AP-48, 2023-Ohio-3855, ___ N.E.3d ___ is also instructive. The plaintiff in *Scott*

claimed that the defendant auto repair shop violated the CSPA when it restored his 1963

Austin-Healy classic car in an unworkmanlike manner. The *Scott* court defined

workmanlike as follows:

> " 'A "workmanlike manner" is defined in terms of how work is customarily
>
> performed by others in the same trade in the same community or the same
>
> type of work.' " *Mathis v. Allied Plumbing & Sewer Servs.*, *Inc.*, 1st Dist. No.
>
> C-061005, 2007-Ohio-6661, 2007 WL 4355310, ¶ 14, quoting *Day-Glo*
>
> *Color Corp. v. Brewer-Garrett Co.*, 8th Dist. No. 87838, 2007-Ohio-159,
>
> 2007 WL 117495, ¶ 7.

*Id.* at ¶27.

{¶23} In addition, the *Scott* court went on to hold that expert testimony is not

always necessary to establish that the work performed was done so in an unworkmanlike

manner:

> An expert witness is not always needed to show a deviation from
>
> common standards of workmanship. *Morris v. Gedraitis*, 5th Dist., 2023-
>
> Ohio-2317, —— N.E.3d ——, ¶ 54; *Mathis* at ¶ 14; *Loukinas v. Roto-Rooter*
>
> *Servs. Co.*, 167 Ohio App.3d 559, 2006-Ohio-3172, 855 N.E.2d 1272, ¶ 24
>
> (1st Dist.). If the evidence establishing the deviation is neither highly
>
> scientific nor technical, then expert testimony is neither necessary nor

required. *Reamensynder v. Marino*, 11th Dist., 2018-Ohio-5336, 127 N.E.3d

340, ¶ 6; *Fullenkamp v. Homan*, *Inc.*, 3d Dist. No. 10-05-16, 2006-Ohio-

4191, 2006 WL 2337608, ¶ 12."

*Id. See also, generally, Morris v. Gedraitis,* 5th Dist. Ashland No. 22-COA-030, 2023-Ohio-2317, at ¶54 ("[w]e first note that there is no per se rule requiring expert testimony in workmanlike-construction cases.")

**{¶24}** In the case sub judice, the trial court conducted a bench trial at which the appellee testified concerning the problems he encountered following the appellant's repairs to his vehicle, including the leaking coolant and steering mechanism difficulties – neither of which require highly scientific or technical knowledge. In addition, the fellow deputy who heard the appellant's owner misrepresent that the appellee's vehicle was "on the rack as we speak" also testified. The appellant's owner, Terry E. Davis, Jr. testified, as did the appellant's head technician. The trial court was in the best position to ascertain the credibility of the witnesses, and found the appellee's testimony regarding the problems he encountered with the appellant's repairs to his vehicle to be more credible than the testimony submitted by the appellant. The trial court further found that the appellant's repairs were unworkmanlike, and that due to the nature and extent of the unworkmanlike work the appellant had violated the CSPA.

**{¶25}** As set forth by the court in *McNichols v. Gouge Quality Roofing, LLC.*, 4th Dist. Pickaway No. 21CA15, 2022-Ohio-3294, 195 N.E.3d 1119, "[i]n a bench trial, the trial court is presumed to apply the law correctly and to act properly in considering the evidence. *See In re. D.W.,* 1st Dist. Hamilton Nos. C-180644 and C-180654, 2020-Ohio-2707, 2020 WL 2060583, at ¶ 11; *In re Watson,* 47 Ohio St.3d 86, 91, 548 N.E.2d 210

(1989)." *Id.* at ¶ 46.  This presumption may be rebutted by showing that the trial court's decision is against the manifest weight of the evidence. As stated by this court in *Swoger, supra*:

> Appellants argue that the verdict on their claim for violation of the CSPA is against the manifest weight of the evidence.
>
> A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). As the trier of fact, the judge is in the best position to view the witnesses and their demeanor in making a determination of the credibility of the testimony. "[A]n appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings." *State ex rel. Celebrezze v. Environmental Enterprises, Inc.,* 53 Ohio St.3d 147, 154, 559 N.E.2d 1335 (1990).

*Swoger* at ¶34-35.

{¶26} In this case, the trial court was in the best position to ascertain the veracity of the witnesses, and we find that there was some competent, credible evidence to support the trial court's finding that the appellant violated the CSPA.

{¶27} Further, the appellant's argument that the trial court based its decision on hearsay is without merit. The appellant failed to object to the hearsay during the bench trial and, accordingly, waived any such error on appeal. *See, Davenport v. Watkins,* 2nd Dist. Montgomery No. 18707, 2002-Ohio-2275, at *4 (admission of medical records

affirmed where appellant did not object to the alleged hearsay, and therefore failed to preserve any error in connection with its admission); and, *In re Hoffman,* 5th Dist. Stark No. 2001CA00207, 2001-Ohio-1816 at *3 ("…[w]hen a party fails to raise a hearsay objection at the time when the documents could be cured, the party waives that error on appeal.") The appellee failed to object to allegedly hearsay evidence during trial, and even used the Mansfield GMC invoice during the presentation of its case, which it now claims on appeal to be hearsay. If there was a hearsay objection to be made, it was waived and cannot now be argued on appeal. Nor does the hearsay issue give rise to plain error, particularly since the appellant utilized the Mansfield GMC invoice during the presentation of its case during trial.

{¶28} Finally, the award of treble damages and attorney fees under the CSPA is within the sound discretion of the trial court, and will only be reversed upon a showing of an abuse of that discretion. In order to rise to the level of an abuse of discretion, the trial court's decision must be unreasonable, arbitrary or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983) 5 Ohio St.3d 217, 450 N.E.2d 1140. The appellant has failed to establish that the trial court acted unreasonably, arbitrarily, or unconscionably in awarding treble damages an attorney fees.

{¶29} Furthermore, the appellant's claim that the presentation of evidence on attorney fees was "trial by ambush" is unpersuasive. The appellee noted during trial that the CSPA allows a prevailing party to recover attorney fees, and requested that in the event the trial court found in his favor a separate hearing on attorney fees be scheduled, at which time he would present his invoice and, if requested by the trial court, expert testimony. The trial court's March 13, 2023 Verdict After Bench Trial found in favor of the

appellee, scheduled the matter for a hearing on attorney fees, and instructed the appellee to present evidence, including expert testimony, regarding attorney fees. The appellant was therefore aware that the appellee would be presenting evidence documenting attorney fees incurred, including expert testimony. There was no "ambush" in this case, and the trial court did not abuse its discretion in awarding treble damages and attorney fees.

## CONCLUSION

{¶30}  Based upon the foregoing, we find that the appellant's assignments of error are without merit and are therefore overruled. The decision of the Richland County Court of Common Pleas is hereby affirmed.

By: Baldwin, J.

Wise, John, P.J. and

Delaney, J. concur.